PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/25/99
THOMAS  K. KAHN
CLERK

_____

No. 98-2763
Non-Argument Calendar

_____

D.C. Docket No. 1:96cv197 MMP


STEPHEN A. KELLEY, JR.,

Plaintiff-Appellant,

versus

KENNETH S. APFEL, Commissioner
of the Social Security Administration,

Defendant-Appellee.


_____

Appeal from the United States District Court for the
Northern District of Florida

_____

**(August 25, 1999)**

Before ANDERSON, Chief Judge, CARNES and HULL, Circuit Judges.

PER CURIAM:

We VACATE our earlier opinion in this matter, published at 173 F.3d 814, and substitute in its place the following, thus granting the government's motion for clarification. Stephen A. Kelley, Jr. appeals the district court's order affirming the Commissioner of Social Security's ("Commissioner") denial of his application for disability benefits under the Social Security Act. On appeal, Kelley asserts that the administrative law judge ("ALJ") erred in finding him not disabled. He contends that the ALJ incorrectly (1) assumed that part-time employment could constitute substantial gainful work; (2) discredited his subjective complaints of pain; and (3) used the testimony of a vocational expert, in lieu of the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 (also known as the "Grids"), to determine his ability to engage in substantial gainful activity.

This Court affirms the Commissioner's decision on a disability benefits application if it is supported by substantial evidence and the correct legal standards were applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). The record reflects that Kelley suffers from degenerative joint disease of the left knee, asbestosis, obesity, progressive arthritic disease, rheumatoid arthritis, and osteoarthritis. The controlling issue with respect to the instant application is whether those impairments caused Kelley to be disabled within the meaning of the Social Security Act during a narrow window of time between September 26, 1991,

and December 31, 1991.[1]  Kelley's occupation prior to the onset of his medical problems was as a welder.  During the relevant time period, Kelley did not work at all, but the ALJ found that Kelley had the residual functional capacity to perform sedentary work, because he could lift 10 pounds occasionally, could frequently lift and carry objects such as docket files, ledgers, and small tools, could sit for 6 hours in an 8-hour workday, could stand or walk for 2 hours in an 8-hour workday, and had transferable skills from his prior occupation as a welder.  The ALJ also found that taking into account this ability to do sedentary work and these transferable skills, there were a significant number of jobs in the national economy which Kelley could have performed during the relevant time period, and thus Kelley was not entitled to benefits.

## I.  KELLEY'S FIRST ARGUMENT: PART-TIME WORK

A.  <u>Resolution of this Issue in Light of the Clarification that the ALJ did not Rely on the Ability to Work Part-Time</u>

---

[1]  On September 25, 1991, a previous application for disability benefits was denied by an ALJ.  That denial was affirmed by the district court and is <u>res judicata</u> as to Kelley's entitlement to benefits on and before that date.  On December 31, 1991, Kelley ceased to have disability insured status under the Social Security Act.

The government's motion for clarification has now demonstrated that -- contrary to our erroneous assumption in our prior, now-vacated opinion, see Part I.B infra -- the ALJ did not rely on an ability to do part-time work in finding that Kelley had the residual functional capacity to perform jobs existing in significant numbers in the national economy. We note that the ALJ found that Kelley had the residual functional capacity to stand and/or walk for up to 2 hours during an 8-hour workday, and to sit for up to 6 hours during an 8-hour workday. ALJ Opinion at 8. These findings, coupled with other findings -- e.g., that Kelley retained the capacity to lift 10 pounds occasionally, and to frequently lift and carry objects such as docket files, ledgers, and small tools -- equate to a finding of capacity to perform full-time sedentary work.[2] All of the ALJ's determinations in this regard are supported by substantial evidence. Thus, we reject Kelley's first argument

---

[2] 20 C.F.R. § 404.1567(a) defines "sedentary work" as that "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Social Security Ruling 83-10 elaborates on § 404.1567(a) by providing that "'[o]ccasionally' means occurring from very little up to one-third of the time," and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." The ALJ's findings of fact in the instant case actually track the precise language set out in 20 C.F.R. § 404.1567(1) and in Ruling 83-10 as the guideposts for full-time sedentary work.

because it erroneously assumes that the ALJ's finding of capacity to perform sedentary work depends upon an ability to do part-time work, and because the ALJ's finding of capacity to perform full-time sedentary work is supported by substantial evidence. Accordingly, there is no need for us to address the relevance of part-time work.

B.  The Confusion in our Prior, Now-Vacated Opinion, and a Note as to the Relevance of Part-Time Work at Steps One and Five of the Sequential Analysis

As indicated above, our prior, now-vacated opinion erroneously assumed that the ALJ had relied on an ability on Kelley's part to do part-time work. Our prior opinion directly confronted Kelley's first argument -- i.e., that the ALJ incorrectly assumed that part-time work could constitute substantial gainful employment. We rejected that argument and held that part-time employment may constitute substantial gainful work. We distinguished some of our case law that may appear to suggest the contrary. In so holding, we relied on 20 C.F.R. § 404.1572(a), which provides that "[y]our work may be substantial even if it is done on a part-time basis." In a motion for clarification of our prior opinion, the

5

government now apologizes that its panel brief to this Court was misleading,[3] and concedes that the above-cited regulation does not apply to Step Five. The government also concedes, based on certain Social Security Rulings, that the ability to perform part-time work does not preclude a finding of disability at Step Five of the sequential analysis.

The confusion over the role of part-time work in this regard stems from the fact that work, or the ability to work, is relevant in at least two distinct steps of the sequential analysis for determining entitlement to disability benefits, i.e., Steps One and Five. Step One asks whether the claimant is currently engaging in "substantial gainful activity." See 20 C.F.R. § 404.1520(a). If the claimant is so engaged, he is not disabled. Id. At Step One, there is no per se rule that part-time work cannot constitute substantial gainful activity. The regulation upon which we

---

[3] In the panel brief, the government argued that part-time work was relevant at Step Five of the sequential analysis (i.e., the step that is relevant in the instant case, see infra) and cited § 404.1572(a) (which it now acknowledges is applicable only at Step One, not at Step Five) for this proposition. The thrust of the government's prior argument was that an ability to work part-time may preclude a finding of disability. The government failed to cite the authorities upon which it now relies for the distinction between Step One and Step Five in this regard. The government's panel brief was also misleading as follows. Instead of demonstrating that the ALJ never assumed that part-time employment could constitute substantial gainful employment at Step Five, the government responded to appellant's argument that the ALJ erred by relying on the ability to perform part-time work -- by arguing that the ability to work part-time could preclude a finding of disability.

relied in our prior opinion (and which was cited by the government in its brief), 20 C.F.R. § 404.1572(a) ("Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis . . . ."), pertains specifically to Step One.

The ability to work is relevant at Step Five, which "considers [the claimant's] residual functional capacity and [his] age, education, and past work experience to see if [he] can do other work [besides his past work]." 20 C.F.R. § 404.1520(f)(1). If the claimant can do other work in this regard, he is not disabled. Id. Although the issue is not totally clear, according to the government's present stance, an ability to do part-time work does not preclude a finding of disability at Step Five. In other words, at Step Five, the government's present representation is that only an ability to do full-time work will permit the ALJ to render a decision of not disabled. The government extracts this interpretation from Social Security Ruling 96-8p. That ruling provides that the relevant concept at Step Five is the residual functional capacity to perform work on a "regular and continuing basis." Social Security Ruling 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id. Thus, if the government is correct in its interpretation, a claimant could pass Step Five and be entitled to benefits even though capable of working on a part-time basis.

7

We emphasize that the instant case was a Step Five case, not a Step One case. Kelley did not work during the relevant time period. Rather, the sequential analysis proceeded to the question of whether Kelley had the residual functional capacity to perform jobs existing in significant numbers the national economy, i.e., Step Five. The government's motion for clarification has now made clear that the ALJ never found that Kelley had the residual functional capacity to do only part-time work; rather, his findings equated to a finding that Kelley had the ability to do full-time sedentary work. Thus, it is not necessary for us to confront the issue of whether part-time work, as opposed to full-time work, will prevent a claimant from being found disabled at Step Five of the sequential analysis. For the same reason, the Former Fifth Circuit case upon which Kelley relies so heavily for the proposition that the capability to do only part-time work is insufficient to disqualify a claimant from receiving benefits, Johnson v. Harris, 612 F.2d 991, 998 (5th Cir. 1980), is distinguishable on its facts.[4] Accordingly, in light of the

---

[4] We note that this situation -- the possibly different roles of part-time work at Step One and Step Five, the statement in § 404.1572(a) that part-time work can be substantial gainful activity, and the language of Johnson v. Harris -- has engendered substantial confusion in the courts. See, e.g., Conn v. Secretary of Health & Human Services, 51 F.2d 607 (6th Cir. 1995) (taking the position that "the claimant need not be found capable of full-time work to be found capable of working" at Step Five and citing § 404.1572(a) as support for this assertion); Wood v. Callahan, 977 F. Supp. 1447 (N.D. Fla. 1997) (taking the position that § 404.1572(a) applies at Step Five, and disregarding the Johnson v. Harris holding as

government's motion for clarification, we reject Kelley's first argument without the need to address the legal issue raised regarding part-time work.

## II. KELLEY'S SECOND ARGUMENT -- SUBJECTIVE COMPLAINTS

Kelley also claims that the ALJ improperly discredited his subjective complaints of disabling pain. In order for a claimant's testimony about the pain he experienced to be taken into account, he must show "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." Landry v. Hecker, 782 F.2d 1551, 1553 (11th Cir. 1986). The ALJ's determination that Kelley made neither of the two alternative showings with respect to the specific period between September 26, 1991, and December 31, 1991 is amply supported by substantial evidence.

---

dicta). Cf. Wright v. Sullivan, 900 F.2d 675, 679-80 (3d Cir. 1990) (blurring the distinction between Step One and Step Five and engaging in substantial criticism of Johnson v. Harris even though only Step One was at issue); Burkhalter v. Schweiker, 711 F.2d 841 (8th Cir. 1983) (holding that actual performance of part-time work during the disability disqualified the claimant from receiving benefits (i.e., Step One) and criticizing Johnson v. Harris which it saw as inconsistent with this rule). We save for another day the question of the relevance of part-time work at Step Five, but encourage the Commissioner to make his regulations more clear and understandable in this regard.

### III. KELLEY'S THIRD ARGUMENT -- VOCATIONAL EXPERT

We do not reach Kelley's third argument, that the ALJ should not have relied on the testimony of a vocational expert, because he did not raise it before the administrative agency or the district court.  See Wheeler v. Heckler, 784 F.2d 1073, 1077 (11th Cir. 1986).

For the foregoing reasons, the judgment of the district court is AFFIRMED.[5]

---

[5]     No member of this panel nor any other judge in regular active service on the Court, having requested that the Court be polled on rehearing en banc (Rule 35, Fed.R.App.P.; Eleventh Circuit Rule 35-5), the petition for rehearing en banc is denied.  The petition for panel rehearing is granted in part in that the prior opinion published at 173 F.3d 814 is vacated and the instant opinion is substituted.