**Ronald P. MOODY, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A.03–G–0856–NE.**

United States District Court,
N.D. Alabama,
Northeastern Division.

Dec. 5, 2003.

Trey Riley, Huntsville, AL, for Ronald P. Moody, plaintiff.

Alice H. Martin, U.S. Attorney, Edward Q. Ragland, U.S. Attorney's Office, Birmingham, AL, Mary Ann Sloan, Social Security Administration–Office of General Counsel, Atlanta, GA, for Jo Anne B. Barnhart, Commissioner of Social Security Administration, defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Ronald P. Moody, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for disability insurance benefits under §§ 216(i) and 223 of the Act. 42 U.S.C. §§ 416(i) and 423.

Ronald P. Moody filed an application for a period of disability and disability insurance benefits (DIB) with a protective filing date of November 24, 1999. Thereafter, plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under § 205(g) of the Act.

## STANDARD OF REVIEW

 The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

██ ██ In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995).

██ In the present case, the plaintiff received a partially favorable decision. ALJ Jerry Shirley determined the plaintiff was unable to perform any work from September 11, 1997 to August 24, 1999. Therefore, the relevant time period for the purposes of this appeal is subsequent to August 24, 1999. After August 24, 1999, the ALJ determined the plaintiff met the first two tests, but concluded he did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commis-

sioner] to show other work the claimant can do." *Foote,* at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical–Vocational Guidelines (the grids). *Foote,* at 1558–59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. *Foote,* at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." *Foote,* at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

■ In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote,* at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* at 1560 (quoting *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991)). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself.* Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim*

*of disability and is not required to produce additional, objective proof of the pain itself.* See 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1215 (11th Cir.1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote* at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

■ When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

*Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF AN INABILITY TO SUSTAIN FULL TIME WORK

■ In this circuit, an inability to engage in full time work normally requires a finding of "disabled." *Johnson v. Harris,* 612 F.2d 993, 998 (5th Cir.1980)("It has been held that a physical limitation which prevents a claimant from working a full work-day, minus a reasonable time for

lunch and breaks, constitutes a disability within the meaning of the Act."); [1] *Smith v. Schweiker,* 646 F.2d 1075, 1081 (5th Cir.1981)("[T]his Court unequivocally held that a 'physical limitation which prevents the claimant from working a full work day, minus a reasonable time for lunch and breaks, constitutes a disability within the meaning of the Social Security Act.'" (quoting *Johnson v. Harris* )). *But cf. Kelley v. Apfel,* 185 F.3d 1211, 1215 n. 4 (11th Cir.1999) ("We save for another day the question of the relevance of part-time work at Step Five . . . .").

■ It is the Commissioner's position in this circuit that only an ability to do full-time work will prevent a finding of disabled at step five.[2] *Kelley,* 185 F.3d at 1214 ("In other words, at Step Five, the government's present representation is that only an ability to do full-time work will permit the ALJ to render a decision of not disabled.") The *Kelley* court noted that this position is based upon Social Security Ruling 96–8p:

> That ruling provides that the relevant concept at Step Five is the residual functional capacity to perform work on a "regular and continuing basis." Social Security Ruling 96–8p. "A 'regular and continuing basis' means 8 hours a day for 5 days a week, or an equivalent work schedule." *Id.*

*Kelley,* 185 F.3d at 1214. Therefore, if the plaintiff cannot perform his prior work, the burden is on the Commissioner at step five to show that the plaintiff can sustain full-time work. If the Commissioner fails to carry this burden, the plaintiff must be found disabled.

An inability to sustain full time work is also relevant at step four. SSR 96–8p notes that the plaintiff's residual functional capacity (RFC) is also used to determine whether a claimant can perform his past relevant work. However, an inability to sustain full time work does not necessarily preclude the performance of past relevant work:

> The ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process. Part-time work that was substantial gainful activity, performed within the past 15 years, and lasted long enough for the person to learn to do it constitutes past relevant work, and an individual who retains the RFC to perform such work must be found not disabled.

SSR 96–8p n. 2.

**DISCUSSION**

■ This case turns upon whether the ALJ's determination that the plaintiff could perform other work after August 24, 1999, is supported by substantial evidence. Remarkably, in spite of uncontradicted medical evidence that the plaintiff suffered from severe degenerative disk disease as of August 24, 1999, the ALJ found there was "no objective clinical evidence of a condition, which could reasonably be expected to produce the level of pain or other symptoms, which the claimant alleges, preclude him from performing substantial gainful activity after August 24, 1999." [R 26] The uncontradicted medical evidence from the plaintiff's treating physician, Dr. Clark, shows that he suffered from "severe degeneration at L4–5." [R 262] This diag-

---

**1.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**2.** For a discussion of the difference between the inquiry at step one and step five, and the implications of an ability to sustain part-time work at Step One, see *Kelley,* 185 F.3d at 1214.

nosis was based upon an MRI of the lumbar spine on September 22, 1999, which revealed spondylolisthesis[3] at the L4–5 level, which was "significantly compressing the dural sac." [R 264] The MRI also revealed "broad based disc protrusion at [L4–5] which is due to the spondylolisthesis." [R 264] There was also "significant stenosis of the dural sac at [the] L3–4 level." [R 264] Without question severe degenerative disc disease can cause disabling pain. *See Jenkins v. Sullivan,* 906 F.2d 107, 109 (4th Cir.1990)(noting that degenerative disc disease is a condition that could reasonably be expected to produce disabling pain); *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir.1987)(same). Therefore, the ALJ's determination that the plaintiff did not meet the Eleventh Circuit Pain Standard is not supported by substantial evidence.

The ALJ, in finding the plaintiff able to perform light work after August 24, 1999, distorted the opinions of Dr. Clark. The ALJ based his decision on Dr. Clark allegedly having found the plaintiff able to perform light work as of August 24, 1999. This was based upon Dr. Clark's assessment six weeks following the plaintiff's back surgery. On April 28, 1999, Dr. Clark's plan was to keep the plaintiff off work for the next two months, after which the plaintiff would be at maximum medical improvement ("MMI") with a lifting restriction of 25 pounds. [R 268] On a Workmen's Compensation Status Form dated May 5, 1999, Dr. Clark indicated the plaintiff would be at MMI on August 24,

1999, and could at that time return to light duty work with a 25 pound lifting restriction. [R 267] It was noted the plaintiff would not need to return to care unless he had recurrent problems. [R 267] Unfortunately, the plaintiff did have recurrent problems, and was seen on August 17, 1999, due to history of left leg pain. [R 265] Dr. Clark noted the left knee jerk was slightly depressed compared to the right. [R 265] the plaintiff was to undergo an MRI if he did not improve. [R 265] On the Workmen's Compensation Status Form dated August 17, 1999, Dr. Clark indicated the plaintiff was unable to return to work and did not indicate the plaintiff would be able to return to restricted duty. [R 266] The plaintiff did not improve and underwent an MRI on September 22, 1999. That MRI, as noted above, showed severe degenerative disk disease.

In spite of the subsequent worsening of the plaintiff's condition prior to August 24, 1999, the ALJ continued to rely upon Dr. Clark's prediction in May 1999 that the plaintiff would be able to perform light work after August 24, 1999. This reliance, in light of Dr. Clark's subsequent treatment notes indicating the plaintiff's condition did not improve as he had hoped is irrational at best.[4]

To support his reliance on Dr. Clark's May prediction, ALJ Shirley recited the prediction by a one-time consultant, Dr. Dick, that with proper medication, the plaintiff's radicular pain and muscle spasm could be controlled. [R 26] When Dr. Dick

---

3. Spondylolisthesis is defined as "forward displacement of one vertebra over another." *Dorland's Illustrated Medical Dictionary* 1567 (27th Edition).

4. The court is reluctant to delve into the motivation of an ALJ who would rely upon a prediction of improvement rather than the medical records showing the improvement did not occur. The ALJ's dogged determination to rely upon Dr. Clark's statement on

May 5, 1999, in spite of the fact that the plaintiff's condition obviously worsened, can be seen in his statements at the hearing. [R 60—64] Such reliance is clearly irrational in view of the subsequent treatment notes of Dr. Clark showing the plaintiff did not improve as predicted. This is akin to insisting that the losing team in a football game actually won even though it scored fewer points because they were favored prior to the kick-off.

examined the plaintiff on February 14, 2001, he was noted to be "in obvious pain." [R 285] Dr. Dick's examination revealed "[b]ilateral paraspinal muscle spasm" and "tenderness in the upper lumbar regions." [R 286] Dr. Dick's evaluation was that the plaintiff had "significant underlying traumatic degenerative disc disease with spasm as evidence [sic] by physical findings on examination." [R 286] Dr. Dick concluded that given "the proper medication, I feel that his radicular pain could be adequately controlled and the muscle spasm which causes him such significant discomfort when he sits for prolonged periods or for that matter sustained in any given position could be ameliorated with proper antispasmodics." [R 286] However, there is no evidence in the record indicating that any treating physician ever prescribed such medications. Dr. Dick's report, in fact supports the plaintiff's allegations of disabling pain. His suggestion that medication could remove the pain is nothing more than a predicted outcome which might or might not come to pass. A reasonable fact finder would not rely upon such a prediction to conclude that the plaintiff did not suffer disabling pain.[5]

At the hearing, the ALJ asked the plaintiff's attorney to attempt to get clarification from Dr. Clark about the restrictions he placed upon the plaintiff's ability to work. Plaintiff's attorney wrote to the ALJ indicating that Dr. Clark would not fill out functional assessment forms. Plaintiff's attorney did, however, submit a Physical Capacities Evaluation from a physical therapist indicating the plaintiff would be unable to walk or stand for more than one hour each in an eight-hour work day. [R 279] The ALJ, however, refused to credit this PCE. His reason was "that it is inconsistent with claimant's limitations

in his current residual functional capacity." [R 26] This is apparently another reference to Dr. Clark's May 5, 1999, notation that the plaintiff would reach MMI on August 24, 1999. The ALJ further speculated that the therapist who completed the PCE did not base her assessment on the entire medical evidence of record. There is, however, no evidence that this was the case.

The only "evidence" supporting the ALJ's decision that the plaintiff was able to perform other work is Dr. Clark's notation on the Workmen's Compensation Status Form dated May 5, 1999, that the plaintiff would be at MMI on August 24, 1999. This is not evidence about the plaintiff's condition on August 24, 1999, but rather a prediction about the plaintiff's future condition. That form also states that the plaintiff would not need to return "unless the patient has recurrent problems." [R 267] The plaintiff did return to Dr. Clark with recurrent problems substantiated by MRI. The ALJ's decision rests upon a prediction that did not pan out. It is irrational and unfair. In light of the abundant evidence showing the plaintiff's condition did not improve as predicted, no rational and fair fact finder would rely on this prediction to conclude the plaintiff could perform other work. Therefore, the Commissioner has not met her burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order will be entered contemporaneously herewith.

### FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

---

5. The ALJ did not find the plaintiff was not disabled due to a failure to follow prescribed treatment and there is no evidence to suggest medicines of the type suggested by Dr. Dick were prescribed.

ORDERED, ADJUDGED and DE-CREED that the decision of the Commissioner of the Social Security Administration be and it hereby is REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed. It is

FURTHER ORDERED that the Commissioner withhold from payments which he may determine are due plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of section 206 of the Social Security Act, as amended, 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.