[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 18, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16267
Non-Argument Calendar

_____

D. C. Docket No. 07-01105-CV-ORL-28-KRS

AZELLA V. LUCKEY,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,
Commissioner, Social Security,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 18, 2009)

Before TJOFLAT, BIRCH and PRYOR, Circuit Judges.

PER CURIAM:

Azella Luckey ("Luckey") appeals the district court's order affirming the

Administrative Law Judge's ("ALJ") denial of her second application for supplemental security income ("SSI") under the Supplemental Security Income for the Aged, Blind and Disabled Program, 42 U.S.C. § 1381, et seq. ("the Act"). Luckey argues that: (1) the Commissioner of Social Security ("Commissioner") failed to automatically reinstate her SSI benefits following her release from prison; (2) the Commissioner was bound by the ALJ's previous decision to award Luckey benefits under the Act in accordance with the doctrine of res judicata; (3) the ALJ erred in finding that Luckey did not have a paranoid personality disorder that was a severe impairment and that he failed to state with specificity the weight he accorded to each medical opinion in the record and the reasons therefor; and (4) the ALJ erred by using an incorrect legal standard to determine Luckey's residual functional capacity ("RFC") and her ability to perform jobs in the national economy. At the outset, we conclude that we do not have jurisdiction to entertain Luckey's first argument. We are persuaded by her third argument, find no merit in her second and do not reach her fourth. Accordingly, we VACATE and REMAND.

## I. BACKGROUND

Luckey filed her first application for SSI on 23 February 1999, alleging a disability onset date of 19 March 1998. R1-11 at 14. In June 2000, an ALJ found

Luckey disabled within the meaning of the Social Security Act and awarded her the appropriate benefits. Id. at 48-49. That ALJ found that Luckey suffered from severe impairments diagnosed as congenital abnormality of the left leg, a congenitally abnormal left foot with abnormal motion and physical findings, a congenitally abnormal placed fourth toe on the right foot, severe scoliosis, allergic rhinitis, and a paranoid personality disorder. Id. at 48. The Social Security Administration ("SSA") later terminated Luckey's benefits after her incarceration in July 2002. Id. at 14, 107. Luckey never sought review over the suspension or termination of her previously awarded benefits through the administrative agency process.

In August 2003, after being released from prison, Luckey filed a new application for SSI benefits, alleging a disability onset date of 1 July 2002. Id. at 82-86, 160. Her application was denied through the reconsideration level. Id. at 52, 56. In response, Luckey requested a hearing before an ALJ. Id. at 59.

At the time of the hearing in 2006, Luckey was twenty-eight years old and had held two jobs since she had been declared disabled in June 2000. Id. at 24, 26. She previously had worked as a motel maid and fast food restaurant cashier but quit each job due to the pain occasioned by all of the "standing and walking around." R1-11 at 25-26, 35. She had attended school through the ninth grade

3

and had been enrolled in special education classes. Id. at 26-27.

Luckey told the ALJ that she suffers from a birth defect which causes one leg to be shorter than the other. This condition results in considerable problems with sitting, standing, and walking. Id. at 27-29. Luckey also maintained that she has difficulty lifting heavy objects and occasionally experiences seizures if overheated or angry. Id. at 29. In addition, she was suspicious of people, did not trust them, tried to stay away from them, and angered easily. Id. at 30-31. According to Luckey, in a typical day, she would dress herself, lie on her back, and get up when it was time to cook or eat. Id. at 32-33. She was not on any medication or seeing any doctors because she had no money or transportation. Id. at 33. Luckey's worst pain was concentrated in her leg, ankle, and foot. Id.

The record contained the following medical evidence. In October 1997, Dr. Jeff Oatley ("Oatley"), a clinical psychologist, diagnosed Luckey with a paranoid personality disorder as "indicated by suspiciousness, doubts loyalty of friends, will not confide in others, is easily angered, and maintains anger towards others." Id. at 270. In April 1999, Oatley reevaluated Luckey and maintained his diagnosis of paranoid personality disorder. Id. at 267. In November 2003, Dr. Susan Conley, a clinical psychologist, found that there was insufficient evidence to determine whether a mental disorder affected Luckey's RFC. Id. at 215, 227.

4

In March 2004, Dr. Malcolm Graham ("Graham"), a clinical psychologist, evaluated Luckey. Id. at 259. After conducting the Wechsler Adult Intelligence Scale III ("WAIS-III") test on Luckey, he opined that her score reflected "a significant under-estimate of her overall level of intellectual functioning." Id. at 261. He noted that her school records did not include an intellectual evaluation "which may indicate that she was not in a class for the mildly mentally retarded. At any rate, her IQ scores are suspect at the present time, but they indicate that she is functioning in the mild range of mental retardation." Id. at 261-62. He found that her scores were "suspect" because "she did not always put forth a good effort on many of the tasks." Id. at 262. He also stated that during her evaluation, Luckey had no problems in her attention, concentration, or recent or remote memory. Id. He found that her performance on those tasks were "much higher than what one would expect, considering her obtained level of intellectual functioning." Id. Nevertheless, Graham diagnosed Luckey with mild mental retardation and probable anti-social personality disorder. Id. He also noted that she was "at especially high risk for returning to anti-social behavior and/or the use of drugs and alcohol." Id. at 263.

In May 2004, Dr. Steven Wise, a psychologist, found that there was insufficient evidence to determine whether a mental disorder affected Luckey's

RFC. Id. at 237, 249. He also noted that because her intelligence scores seemed invalid there was no way to assess her current capacity with those test results. Id. at 249. Luckey also submitted a statement from her sister-in-law, Jacqueline Wiley. Id. at 169-77. Wiley stated that Luckey gets on her nerves and that she could only spend about thirty minutes with her at any one time. Id. at 169. Wiley also stated, "If you ask me, the girl got problems, and [an] attitude problem." Id. at 173.

After considering all of the evidence, the ALJ found that Luckey had not been under a disability as defined by the Act. Id. at 14. The ALJ applied the five-step sequential evaluation process as defined in 20 C.F.R. § 416.920(a)(4)(i)-(v) and made the following findings. Id. at 16-19. First, the ALJ determined that Luckey had not engaged in substantial gainful activity during the relevant time period. Second, the ALJ concluded that Luckey had severe impairments from a leg deformity, back pain, and probable borderline intellectual functioning. The ALJ noted that although a previous ALJ had found Luckey disabled, that decision was predicated on a mental impairment of paranoid personality disorder. Id. at 18. The ALJ stated that he was "not persuaded by the evidence of record that there is a mental impairment present that would prevent her from performing all types of work." Id. at 18. The ALJ also noted that it was "suspect" that Luckey "no longer

6

required any medical treatment after she was granted disability benefits and Medicare coverage for her congenital abnormalities or for her alleged mental impairments." Id. Third, the ALJ found that Luckey's impairments, either singly or in combination, did not meet any of the listed impairments in 20 C.F.R. § 404, Appendix 1. Id. at 17. Fourth, the ALJ determined Luckey had a RFC for a significant range of work at the light level of exertion but noted that due to her probable borderline intellectual functioning, she was limited to unskilled work. The ALJ also found that Luckey was unable to perform any past relevant work as a motel maid or restaurant cashier. Finally, the ALJ found that a significant number of jobs in the national economy existed that Luckey could perform given her age, education, work experience, and RFC.

After the Appeals Council denied review, Lucky sought review in district court. R1-1. The district court referred all motions to a magistrate judge. The magistrate judge ordered supplemental briefing on the issue of whether Luckey's suspended benefits should have resumed following her release from jail, noting that neither party had raised the issue. R1-15. After the additional briefing, the magistrate judge recommended that the district court affirm the Commissioner's decision. R1-18 at 14. The magistrate judge also noted that Luckey had failed to exhaust her administrative remedies regarding the suspension of her previous

benefits.  Id. at 10 n.4.  The district court adopted the magistrate judge's recommendation and affirmed the decision of the Commissioner.  R1-21.

## II.  DISCUSSION

We first address Luckey's contentions that the Commissioner failed to automatically reinstate her SSI benefits following her release from prison and that the Commissioner was bound by the ALJ's previous decision to award Luckey benefits under the Act in accordance with the doctrine of res judicata.

We review de novo whether a district court has jurisdiction over an appeal from the Social Security Administration.  Cash v. Barnhart, 327 F.3d 1252, 1255 n.4 (11th Cir. 2003) (per curiam).  We also review the decision of an ALJ as the Commissioner's final decision when the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision.  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).  We review the Commissioner's legal conclusions de novo and consider whether the Commissioner's factual findings are supported by substantial evidence.  Lewis v. Barnhart, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam).

The Social Security Act provides for judicial review over final decisions of the Commissioner.  See 42 U.S.C. § 405(g).  However, if a claimant fails to raise an argument before the administrative agency, we will not consider it on appeal.

8

Kelley v. Apfel, 185 F.3d 1211, 1215 (11th Cir. 1999) (per curiam). In this case, Luckey did not raise any arguments regarding the loss of her previously awarded benefits to the administrative agency. Luckey ultimately argued the issue only when instructed to do so by the magistrate judge. As such, the administrative agency never had an opportunity to address the issue. Therefore, we will not consider it on appeal.

Likewise, we conclude that the doctrine of administrative res judicata is not applicable in this case. Administrative res judicata applies when the agency has made a "previous determination or decision . . . about [a claimant's] rights on the same facts and on the same issue or issues, and [that] previous determination or decision [had] become final by either administrative or judicial action." 20 C.F.R. § 404.957(c)(1); see also Cash, 327 F.3d at 1255. In 2000, an ALJ determined that based on the facts surrounding that time period, Luckey had been disabled since March 1998. R1-11 at 48. However, in the application at issue, Luckey alleged a disability onset date of 1 July 2002. Id. at 82. Because the factual time period for Luckey's current application is different from her previous application, administrative res judicata does not apply.

We now consider Luckey's third argument that the ALJ erred in finding that Luckey did not have a paranoid personality disorder that was a severe impairment,

9

and that the ALJ failed to state with specificity the weight he accorded to each medical opinion in the record and the reasons therefor. As previously noted, we review the Commissioner's legal conclusions de novo and consider whether the Commissioner's factual findings are supported by substantial evidence. Lewis, 285 F.3d at 1330. "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). We are precluded from "deciding the facts anew, making credibility determinations, or re-weighing the evidence." Id.

"The ALJ must state specifically the weight accorded each item of evidence and the reasons for his decision." Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). We have made it abundantly clear that "[u]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Id. (quotation

10

marks and citation omitted).

The legal framework for cases arising out of the Social Security Act is quite familiar to us.

> The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits. The Commissioner uses a five-step process to determine whether a claimant has met the burden of proving his disability. In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

Doughty, 245 F.3d at 1278 (citations omitted).

Our present inquiry concerns the second step of the sequential evaluation process – whether Luckey carried her burden of proving that she has a severe impairment or combination of impairments and whether the ALJ stated, with adequate specificity, "the weight [he] accorded each item of evidence and the reasons for his decision." Gibson, 779 F.3d at 623. In this case, the record contains three mental health evaluations by two different examining doctors. In

11

1997, Oatley diagnosed Luckey with a paranoid personality disorder noting that she was suspicious, "doubts loyalty of friends, will not confide in others, is easily angered, and maintains anger towards other." R1-11 at 270. In April 1999, he reevaluated Luckey and concluded that she still had a paranoid personality disorder. Approximately five years later, in March 2004, Graham evaluated her and diagnosed her with a "[p]robable anti-social personality disorder" noting that she was "at especially high risk for returning to anti-social behavior and/or the use of drugs and alcohol." Id. at 262-63.

After a careful reading of the ALJ's decision, we are compelled to conclude that the ALJ failed to state, with the requisite specificity, the weight he accorded to each piece of medical evidence in the record. First, it is unclear whether the ALJ considered Oatley's diagnoses of a paranoid personality disorder.[1] The ALJ's comments regarding Oatley's reports were limited to the following:

> It should be noted that the prior Administrative Law Judge's finding of disabled was predicated upon the claimant's mental impairment of paranoid personality disorder. The undersigned is not persuaded by the evidence of record that there is a mental impairment present that would prevent her from performing all types of work.

---

[1] We recognize the force of the argument that the ALJ was not required to consider Oatley's diagnoses because they pertained only to Luckey's previous disability application. That said, Oatley's medical reports were part of the record evidence considered by the ALJ. As we have noted, in order for us to provide meaningful appellate review, we must have some basis for determining whether the ALJ considered Oatley's reports, and, if so, what weight he accorded them.

<u>Id.</u> at 18.  Moreover, although the ALJ referenced Graham's report and relied upon it for his determination that Luckey "is not mildly mentally retarded," <u>id.</u> at 17, the ALJ does not include that portion of Graham's report in which Graham notes that Luckey "is functioning in the mild range of mental retardation."  <u>Id.</u> at 262.  Most alarmingly, the ALJ omits Graham's ultimate diagnosis altogether – "[p]robable anti-social personality disorder."  <u>Id.</u>  Without a more specific statement of the ALJ's considerations, we are unable to discharge our duty to scrutinize the record in order to determine whether the ALJ's severe impairment findings are rational and supported by substantial evidence.  <u>See</u> <u>Cowart</u>, 662 F.2d at 735.  Accordingly, we are obligated to vacate the judgment of the district court and remand the case with instructions that it be returned to the Commissioner for further proceedings consistent with this opinion.[2]

## III.  CONCLUSION

Luckey appeals the district court's order affirming the ALJ's denial of her second application for SSI.  Because we conclude that the ALJ failed to state with specificity the weight he accorded to each medical opinion in the record and the reasons therefor, we VACATE the judgment of the district court and REMAND

---

[2] Given our conclusion, we do not reach Luckey's fourth and final argument regarding the ALJ's application of an allegedly incorrect legal standard in his determination of Luckey's RFC and her ability to perform jobs in the national economy.

with instructions that the case be returned to the Commissioner for further

proceedings consistent with this opinion.

**VACATED and REMANDED.**