[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11749

Non-Argument Calendar

_____

BELINDA A. GARRETT,

Plaintiff-Appellant,

*versus*

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-05076-WMR

_____

Before JILL PRYOR, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Belinda Garrett appeals the district court's order affirming the Commissioner of the Social Security Administration's ("SSA") denial of Disability Insurance Benefits ("DIB").  On appeal, Garrett argues first that the administrative law judge ("ALJ") did not review the substantial medical documentation that she submitted, as well as the large number of her conditions.  Second, she argues that the ALJ exhibited implied and racial bias against her.  For the reasons stated below, we affirm.

I.

On October 15, 2013, Garrett filed an application for DIB, stating that her disability began on March 15, 2011.  In a disability report submitted with her application, Garrett explained that her disabilities consisted of the following: a torn rotator cuff, diabetes, high blood pressure, asthma (chronic), a back injury (chronic pain/edema legs & feet), carpal tunnel syndrome (both hands/swelling/weakness), degenerative arthritis/bulging disc (walk with cane), peripheral neuropathy, kidney disease, heart murmur (chronic fatigue syndrome), and diabetic background neuropathy (blurred vision).

On March 7, 2014, Garrett's application for DIB was denied, and on October 17, 2014, it was again denied after she moved for reconsideration of the initial denial.  Garrett requested a hearing

before an ALJ, who held a hearing on May 16, 2016. Before Garrett and a vocational expert, Allan Billehus, testified, the ALJ accepted into evidence, without objection from Garrett, the entire administrative record until then and Garrett's medical records. Garrett also waived her right to be represented by counsel and proceeded *pro se*. Following the introduction of the record evidence, Garrett testified about her employment and education history, her living situation, her medical issues, and gave examples of how normal activities were difficult due to her conditions. Billehus, the vocational expert, testified that, under various hypotheticals, someone in Garrett's position could work in the national economy.

On September 30, 2016, the ALJ found that Garrett was not disabled. On October 2, 2017, the Appeals Council ("AC") granted Garret's request for review and remanded the case to the ALJ because the ALJ's decision failed to sufficiently address the issue of transferability of skills and failed to obtain testimony from the vocational expert as to whether any vocational adjustment would be required for Garrett to perform the specific jobs identified in the decision.

The ALJ then held a second hearing on March 1, 2018, at which Garrett again waived her right to counsel and proceeded *pro se*. Before taking testimony, the ALJ noted that the entire administrative record until then and Garrett's medical records were part of the evidentiary record. Garrett reiterated her prior testimony and testified that, since the previous hearing, she had received treatment for depression, treatment for her leg and was diagnosed

with abdominal wall cellulitis.  Another vocational expert, Valerie Allen, testified that Garrett could perform her past work of being an administrative assistant and that Garrett could perform this job with the use of a cane and without needing to drive at night.  The expert also testified that the administrative assistant position would not be available if Garrett could not read small print, no job in the national economy would be available if Garrett needed to elevate her legs above her waist for 15% of the day, and no job would be available if Garrett needed multiple fifteen-minute breaks through-out the workday to use a breathing machine due to asthma.

Following the second hearing, the ALJ denied Garrett's re-quest for DIB.  In doing so, the ALJ conducted the five-step analysis in determining whether Garrett was disabled.  At step one, the ALJ found that Garrett had not been engaged in substantial gainful ac-tivity since her alleged onset date of March 15, 2011, through her date last insured of December 31, 2017.  At step two, the ALJ found that Garrett had severe impairments that significantly limited her ability to perform basic work activities consisting of: osteoarthritis of the bilateral knees, obesity, adhesive capsulitis of the right shoul-der, bilateral carpal tunnel syndrome, diabetes mellitus, diabetic macular edema, asthma, degenerative joint disease of the lumbar spine, peripheral neuropathy, and cataracts.  The ALJ noted that she considered the medical documentation submitted on Garrett's claim of congestive heart failure, including the opinion of Garrett's general physician, Dr. Faye Riley, but the ALJ found that the sup-porting evidence did not show it as a severe impairment and noted

that Dr. Riley was not a cardiologist nor a specialist. At step three, the ALJ found that Garrett's impairments did not meet or medically equal the severity requirements of the relevant regulations.

At step four, the ALJ, stating that she had considered the entire record, found that Garrett's residual functional capacity ("RFC") was to perform sedentary work as defined in 20 CFR § 404.1567(a), except that: (1) she could not climb ladders, ropes, or scaffolds, but was able to sometimes climb ramps and stairs; (2) she could not crawl, but was able to sometimes balance, stoop, kneel, and crouch; (3) she was limited to frequent handling and fingering bilaterally; (4) she was limited to frequent pushing and pulling with the lower extremities; (5) she should avoid concentrated exposure to dust, fumes, and pulmonary irritants, as well as extreme temperatures, humidity, and hazards such as moving machinery and unprotected heights; (6) she should not engage in tasks requiring night driving as part of the job duties; and (7) she required a cane for ambulation. In her analysis, the ALJ noted that Garrett failed to provide evidence to support the severity of most of her claimed impairments and that the evidence was inconsistent with some of her claims. At the final step, the ALJ found that Garrett would be able to perform her past work as an administrative assistant because that work did not require the performance of work-related activities precluded by the RFC. Accordingly, the ALJ found that Garrett was not disabled.

Garrett subsequently appealed the denial of DIB to the AC. The AC denied her request for review.

Garrett then filed a complaint in the district court, requesting that the court review the Commissioner's denial of DIB. The Commissioner filed an answer denying liability and asserting various defenses.

Garrett then filed a memorandum in support of disability. Garrett claimed that the ALJ denied her application for DIB based on personal bias, listing various examples of the ALJ's alleged bias against her. Garrett also listed and described each of her many claimed impairments, listed the medications she was taking, and provided examples of how her impairments impacted her everyday life. She claimed that the ALJ misrepresented the facts about her depression and erred in discounting the diagnosis from Dr. Riley concerning her congestive heart failure. And she asked the district court to grant a favorable decision in the form of DIB, as well as additional pain and suffering damages because she would have been able to receive specialized care had her application for DIB been granted earlier. Garrett attached over 140 pages of medical records to her memorandum, some of which were not in the record; the Commissioner later moved to strike the supplementation of these new records.

The Commissioner responded in opposition, arguing that Garrett's allegations of the ALJ's bias lacked foundation in the record and were not the type of conduct that showed bias. The Commissioner also argued that Garrett failed to demonstrate any error with respect to the ALJ's treatment of the vocational expert's testimony and that substantial evidence supported the ALJ's evaluation

of the evidence regarding her various conditions.  And the Commissioner argued that Garrett failed to show disability beyond all doubt, so if the district court did find that the ALJ's decision was not supported by substantial evidence or that the ALJ did not follow the applicable legal standards, it should reverse and remand instead of granting DIB.

A magistrate judge issued a report and recommendation ("R&R") recommending affirmance of the Commissioner's decision.  The magistrate judge noted that Garrett failed to comply with his scheduling order and that her brief failed to se forth specific claims of error or citations to the record.  Nonetheless, the magistrate judge liberally construed her brief and considered the arguments he could discern from the brief.  The magistrate judge rejected her arguments that the ALJ had not properly determined all of her severe impairments and did not consider her impairments in combination.  The magistrate judge noted that the ALJ had found for Garrett at step two, that substantial evidence supported the ALJ's finding that Garrett's alleged depression was not a severe, medically determinable impairment, and that the ALJ's decision demonstrated that she considered Garrett's impairments in combination.  The magistrate judge found that substantial evidence supported the ALJ's RFC assessment, including her consideration of Dr. Riley's opinion, and the ALJ's evaluation of Garrett's subjective complaints.  The magistrate judge also found that the ALJ properly relied on the vocational expert's testimony.  And the magistrate

judge recommended rejecting Garrett's arguments that the ALJ and Commissioner were biased against her.

The district court then issued an order adopting the R&R after a de novo review of the record, denying the Commissioner's motion to strike, and affirming the Commissioner's denial of DIB. This timely appeal ensued.

## II.

"In Social Security appeals, we review de novo the legal principles upon which the Commissioner's decision is based. However, we review the resulting decision only to determine whether it is supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* In doing so, we do not reweigh the evidence, decide facts anew, or make credibility findings. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

We generally will not consider on appeal arguments not raised before the administrative agency or the district court. *Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999). "Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived." *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998).

### III.

On appeal, Garrett argues that the decision to deny her claim for DIB should be reevaluated because the ALJ did not review the substantial medical documentation of her conditions nor consider the "overwhelming number of conditions" she suffers. She also argues that the ALJ who reviewed her case evaluated her claim with implied and racial bias. In response, the Commissioner argues that: (1) Garrett's argument as to the number of conditions she has was not raised in the district court below, nor adequately briefed to us in her brief to this Court, and is waived; (2) her argument that the documentation in the record proved her impairments caused her limitations that resulted in an inability to work was waived because she failed to adequately brief the issue; and (3) she failed to prove that the ALJ and Commissioner were biased against her.

As an initial matter, we conclude that Garrett has waived her arguments that the ALJ did not review the medical documentation she submitted nor the number of conditions she suffers. Garrett failed to make these arguments below, *Kelley*, 185 F.3d at 1215, and only raised them in a perfunctory manner on appeal, without supporting authorities, arguments, and record citations, *McClain*, 138 F.3d at 1422.

We now turn to Garrett's bias-related argument. "The ALJ plays a crucial role in the disability review process," and "[t]he impartiality of the ALJ is thus integral to the integrity of the system." *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996). A presumption

exists that judicial and quasi-judicial officers, such as ALJs, are un-biased. *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982). The claimant may rebut this presumption by a showing of conflict of interest or some other specific reason for disqualification, but gen-eralized assumptions are insufficient. *Id.* at 195–96. The party as-serting a disqualifying interest bears the ultimate burden of estab-lishing that interest. *Id.* at 196. To be disqualifying, the alleged bias must stem from extrajudicial sources, and the opinion on the mer-its must be based on something other than what was learned from the case. *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966).

We conclude that Garrett failed to show that the ALJ or Commissioner was biased in handling her case. Indeed, Garrett, in her brief, only offers bare assertions that the ALJ was implicitly and racially biased against her without pointing to any specific instances of bias in her case. And below, the magistrate judge found that Garrett had failed to provided any record evidence to support her allegations of bias by the ALJ. Therefore, Garrett's argument fails.

\* \* \* \*

Accordingly, we affirm the district court's order.

**AFFIRMED.**