Carol E. **CARLISLE**, Plaintiff,

v.

**Jo Anne B. BARNHART, Commissioner of Social Security**, Defendant.

**No. CIV.A. 04G2444S.**

United States District Court, N.D. Alabama, Southern Division.

Oct. 3, 2005.

Darryl W. Hunt, Clark & James LLC, Birmingham, AL, for Plaintiff.

Alice H. Martin, Lane H. Woodke, US Attorney's Office, Birmingham, AL, Anita Kay Brotherton, Social Security Administration, Atlanta, GA, for Defendant.

### MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Carol E. Carlisle, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, at 1239.

### STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a peri-

od of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope,* at 477; *accord Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995).

In the instant case, the ALJ, Robert G. Faircloth, determined the plaintiff met the first two tests, but concluded she did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform her past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote,* at 1559. Furthermore, when a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical–Vocational Guidelines (the grids). *Foote,* at 1558–59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. *Foote,* at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." *Foote,* at 1559.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

▆▆▆ As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir.1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986); *accord Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight . . . ." *MacGregor,* 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. *MacGregor,* 786 F.2d at 1053;

*Elam,* 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. *See MacGregor,* 786 F.2d at 1054; *cf. Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE IMPACT OF AN INABILITY TO SUSTAIN FULL TIME WORK AT STEP FIVE OF THE SEQUENTIAL ANALYSIS

There is confusion in this circuit as to whether an inability to engage in full time work requires a finding of "disabled" at step five of the sequential analysis. *Compare Johnson v. Harris,* 612 F.2d 993, 998 (5th Cir.1980)("It has been held that a physical limitation which prevents a claimant from working a full work-day, minus a reasonable time for lunch and breaks, constitutes a disability within the meaning of the Act."),[1] *and Smith v. Schweiker,* 646 F.2d 1075, 1081(5th Cir. June 4, 1981)("[T]his Court unequivocally held that a 'physical limitation which prevents the claimant from working a full work day, minus a reasonable time for lunch and breaks, constitutes a disability within the meaning of the Social Security Act.'" (quoting *Johnson v. Harris*)) *with Kelley v. Apfel,* 185 F.3d 1211, 1215 n. 4 (11th Cir.1999) ("We save for another day the question of the relevance of part-time work at Step Five . . . .").

Nonetheless, it is the Commissioner's position in this circuit that only an ability to do full-time work will prevent a finding of disabled at step five.[2] *Kelley,* 185 F.3d at 1214 ("In other words, at Step Five, the government's present representation is that only an ability to do full-time work will permit the ALJ to render a decision of not disabled.") The *Kelley* court noted that this position is based upon Social Security Ruling 96–8p:

> That ruling provides that the relevant concept at Step Five is the residual functional capacity to perform work on a "regular and continuing basis." Social Security Ruling 96–8p. "A 'regular and continuing basis' means 8 hours a day for 5 days a week, or an equivalent work schedule." *Id.*

*Kelley,* 185 F.3d at 1214. Therefore, if a plaintiff cannot perform his prior work, the burden is on the Commissioner at step five to show that the plaintiff can sustain full-time work. If the Commissioner fails to carry this burden, the plaintiff must be found disabled.

Social Security Ruling 96–8p also applies to considerations of a claimant's RFC at step four. However, an ability to work eight hours a day for five days a week is not necessarily required:

> The ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process. Part-time work that was substantial gainful activity, performed within the past 15 years, and lasted long enough for the person to learn to do it constitutes past relevant work, and an individual who retains the RFC to perform such work must be found not disabled.

SSR 96–8p, n. 2. But, if the claimant's RFC is below that required by his or her

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

2. For a discussion of the difference between the inquiry at Step One and Step Five, and the implications of an ability to sustain part-time work at Step One, see *Kelley,* 185 F.3d at 1214.

past relevant work, and is also insufficient to allow sustained full time work, a finding of disabled is compelled by the application of SSR 96–8p.

## DISCUSSION

The plaintiff filed an application for Supplemental Security Income payments with a protective filing date of May 23, 1997. Her application was denied initially and upon reconsideration. A hearing was held before an ALJ, who determined she was not disabled. The plaintiff exhausted her administrative remedies and thereafter filed an appeal in the United States District Court for the Northern District of Alabama. Upon motion of the Commissioner, the action was remanded for further development of the record.

On remand, the action was assigned to ALJ Faircloth and a hearing was scheduled. The claimant did not appear at the hearing, but her attorney appeared on her behalf. The plaintiff's attorney in her brief to this court asserts that at the hearing, in an off the record conference, the ALJ was informed that the plaintiff had returned to full-time work in 1999. Plaintiff's attorney also asserts that the ALJ concluded that if the plaintiff requested a closed period and also agreed that it would be unnecessary for the plaintiff to appear at the ALJ hearing, a favorable decision would be rendered for that closed period. The plaintiff's attorney wrote a letter to the ALJ Dated September 5, 2002, which contained the following:

As discussed, Ms. Carlisle returned to full-time work in 1999, therefore, this claim has now become one for a closed period of benefits from Ms. Carlisle's application date of May 3, 1997[3] to December 31, 1998. We respectfully request such a closed period. Further, as this is a remand case, we already have testimony from Ms. Carlisle about the severity of her symptoms from her impairments for the period in question.

We would thus submit that Ms. Carlisle is an unnecessary party for purposes of rendering a decision in her case and would request a decision on the record as it now stands. Your Honor will also recall that the main issue of the remand was further consideration of evidence which was not present in the record before, evidence which strongly suggested claimant was disabled. (Exhibit 3F and AC–1).

[R 306] On November 4, 2002, without conducting another hearing, the ALJ rendered a decision denying the plaintiff's claim.

The evidence referred to included a physical capacities evaluation (PCE) completed by the plaintiff's treating orthopod. On that form, Dr. Floyd indicated the plaintiff would only be able to sit for four hours and stand/walk for a total of 2 hours in an eight-hour day. [R 258] This PCE would preclude full time work, and if credited, would require a finding of disability at step five of the sequential analysis. Dr. Floyd also completed a form indicating the plaintiff suffered from pain to such an extent "as to be distracting to adequate performance of daily activities or work." [R 259] If this opinion were credited, it would also compel a finding of disability.

The plaintiff was also seen by a Social Security Administration consulting physician, Dr. Schultz, who concluded the plaintiff's "ability to perform work related activities such as standing, walking, lifting, carrying or handling objects is affected significantly by her left lower extremity, painful varicosities and her necessity to ambulate with a cane." [R 227] During his exam he found "numerous varicosities in [the] thigh and calf areas which are exqui-

---

**3.** The correct date is May 23, 1997. [R 146]

sitely tender to palpation." [R 226] Dr. Schultz did not complete a PCE or pain form, and gave no opinion as to the plaintiff's ability to perform work related activities while seated. Nonetheless, the ALJ relied heavily on Dr. Schultz's examination in order to support his decision. In her brief the Commissioner sets forth the argument as follows: "However, [Dr. Schultz] did not state that Plaintiff was totally disabled and he did not identify any functional limitations that would interfere with sedentary work." (Comm'r's br. at 6–7). Dr. Schultz's silence as to these issues may not be used to prove their negative. While it is true Dr. Schultz did not state that the plaintiff was "totally disabled," it is equally true that he did not state that plaintiff is "not disabled." Likewise, his silence as to any restrictions to sedentary work may not be read as a statement that no such restrictions exist. In *Lamb v. Bowen,* 847 F.2d 698 (11th cir.1988), the court discussed a very similar situation:

> The Secretary, in his brief, makes much of the fact that until January 7, 1985 Dr. Burr had not indicated that appellant was permanently unemployable; that Dr. Hutchison in November of 1982 revealed that appellant could return to work in three months; that Dr. Kane never said appellant could not perform light work, and that Dr. Burr in June of 1983 indicated that in four to five months appellant could return to work. Dr. Kane opined in June of 1984 that appellant's condition and the restriction of activity necessitated by the condition was not compatible with his former employment. *It is true that Dr. Kane did not restrict appellant from light work. It is equally true that he did not recommend light work. In fact, Dr. Kane did*

*not address the issue of any type of work but appellant's former work. Such silence is equally susceptible to either inference, therefore, no inference should be taken.*

*Id.* at 703 (emphasis added). In the present case, Dr. Schultz only addressed the issue of the impact of the plaintiff's impairment to do "work related activities such as standing, walking, lifting, carrying or handling objects." His silence on the issue of sedentary work or whether plaintiff was totally disabled cannot, therefore, be used to support the ALJ's conclusion that the plaintiff could perform sedentary work.

■ The ALJ recited several reasons for rejecting the opinions of the plaintiff's treating orthopod. He stated that "[n]o medically determinable basis was given for the functional restrictions stated by Dr. Floyd." [R 273] However, the PCE completed by Dr. Floyd requested that it be completed "based on your clinical evaluation of the patient and other testing results." [R 258] *See Hale v. Bowen,* 831 F.2d 1007, 1012 n. 7 (11th Cir.1987)(noting that the opinions contained on a PCE form, which instructed the physician to base his opinions on his clinical findings, should be assumed to be the doctor's own professional assessment ). On the pain assessment, Dr. Floyd circled "yes" in response to the question: "Does this patient have an underlying medical condition consistent with the pain he or she experiences?" [4] [R 262] In addition, the treating notes from the orthopaedic clinic show diagnoses capable of producing disabling pain. On September 10, 1997, the plaintiff was treated for left knee pain with swelling in her left leg. [R 198] Her calf was found to be tender with movement and veins were noted. [R 198] The diagnostic

---

4. Context makes clear that pages 260 and 262 were inadvertently interchanged. Page 262 should have followed page 259.

assessment was no acute pathology on exam, but an occult meniscal tear could not be ruled out. [R 198] The diagnostic plan included the need for doppler exam of the left leg to rule out deep vein thrombosis ("DVT"). [R 198] An examination on October 13, 1997, was positive for synovitis of the left knee and guarding was noted. [R 199] On February 23, 1998, the plaintiff was seen by Dr. Floyd. On physical exam he noted the presence of effusion on the medial side of the left knee, found crepitus [5] with movement, and found the calf tender to touch with varicosities present. [R 242] His diagnostic assessment was bursitis and patellar tendinitis. [R 242]

The ALJ's finding that Dr. Floyd's PCE and pain assessment "are totally at odds with his own medical records" is clearly refuted by the above examples. It is the ALJ's determination that is totally at odds with the medical records. The ALJ asserts that "Dr. Floyd ordered numerous diagnostic tests and was unable to arrive at a single diagnosis to explain the claimant's symptoms." [R 277] However, as noted above, Dr. Floyd in fact diagnosed bursitis and patellar tendinitis. The ALJ recites that "Dr. Floyd indicated that secondary gain issues confused the claimant's picture and that the claimant's symptoms were very puzzling." [R 277] This is in reference to orthopaedic clinic treatment note of August 10, 1998. At that exam Dr. Floyd found extreme tenderness in the plaintiff's calf and possible decreased sensation over the lateral thigh. [R 229] His diagnostic assessment was as follows:

Very puzzling unable to get a single [diagnosis] for all the symptoms-Picture confused by secondary gain issues.

Suggest evaluation in General Surgery for [history] of DVT? Post DVT syndrome?

Also by neurology to [rule out] neurogenic [indication?]

The plaintiff was, in fact referred to the Neurology Clinic on August 14, 1998, and on examination she was found to have a swollen left knee which was tender to touch. [R 228] The diagnostic impression was a swollen and painful knee and she was to "follow-up with Rheumatology to assess possible arthritis." [R 228]

The ALJ, discussed the treatment notes from the Rheumatology Clinic as follows:

She appeared on October 19, 1998, complaining of left knee pain, calf and back pain. Examination of the left knee showed a small effusion. Tenderness was present. X-rays of the claimant's pelvis were unremarkable. A steroidal injection was given and she was prescribed Tylenol # 3 for her complaints of pain. The claimant returned on November 9, 1998, stating that the injection had not helped much. X-rays showed bilateral degenerative changes of the pelvis. No acute process was seen. X-rays of the lumbar spine were normal. Physical examination showed a small amount of effusion of the left knee. Multiple varicosities were present in the left calf. Tenderness was present of [sic] the left trochanter. Hyperesthesia [6] was present in an L4–5 and L5–S1 distribution. The claimant's diagnoses were arthritis of the left knee and hyperesthesia of the left leg in an L4–5 and L5–S1 distribution. The claimant was provided refills of Trazodone and

---

5. Crepitation is defined as "1. a sound like that made by rubbing the hair between the fingers, or like that made by throwing fine salt into a fire. 2. the noise made by rubbing together the ends of a fractured bone." *Dorland's Illustrated Medical Dictionary* 395 (27th Edition).

6. Hyperesthesia is "a dysesthesia consisting of increased sensitivity, particularly a painful sensation from a normally painless touch stimulus." *Dorland's Illustrated Medical Dictionary* 793 (28th Edition).

Tylenol # 3 and instructed to return to the clinic in two weeks.

[R 273] The ALJ's account of the plaintiff's treatment at the Rheumatology Clinic shows that her treating physicians continued to find that she suffered from pain in her left knee and varicose veins and support rather than contradict the plaintiff's claim of disability.

The ALJ's rejection of the opinions of Dr. Floyd is not supported by substantial evidence. The evidence cited by the ALJ would not be accepted by a reasonable person as adequate to support a rejection of the opinions of the plaintiff's treating physician. The medical evidence, when taken as a whole, would not lead a reasonable person to reject the opinions of Dr. Floyd. The record shows that the plaintiff's treating physicians never questioned the presence of the plaintiff's pain. This is made clear by the continued efforts to arrive at a definite diagnosis or diagnoses to explain the plaintiff's pain. Every doctor that examined the plaintiff during the relevant period of time, including the Commissioner's consultant, found that she had pain in the left leg. On numerous examinations her left knee was swollen and she was ultimately diagnosed with arthritis in the left knee.

The ALJ rejected the only PCE and pain assessment in the record. These were from Dr. Floyd, a treating physician and orthopaedic specialist whose opinions are, therefore, entitled to more weight.[7] An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition. He is not free to base his decision on such unstated reasons or hunches. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in *Marbury v. Sullivan,* as follows:

An ALJ sitting as a hearing officer *abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians:* "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." *Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir.1988).... An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity;* however, as a hearing officer *he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.*

Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand....

Although Social Security disability benefits must be reserved only for those who qualify to receive them, *an ALJ may not arrogate the power to act as both judge and physician.* The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and instead satisfies himself with merely serving as a judge.

957 F.2d 837, 840–41 (11th Cir.1992)(italics in original)(emphasis added). Rather than

---

7. "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist." 20 C.F.R. § 404.1527(d)(5).

accepting Dr. Floyd's PCE, the ALJ "succumbed to the temptation to play doctor and make [his] own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996).

## CONCLUSION

The ALJ's recited reasons for rejecting the opinions of the plaintiff's treating orthopod, Dr. Floyd, are not supported by substantial evidence. A reasonable person would not reject Dr. Floyd's PCE and pain assessments based upon the medical evidence of record. Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, at 1239. Therefore, substantial evidence does not support the decision of the ALJ. Based upon the opinions of Dr. Floyd, the plaintiff was unable to sustain full-time work during the relevant period in question and is entitled to the closed period of disability sought. The action will be remanded with instructions that the plaintiff be awarded benefits based upon a closed period of disability from May 23, 1997 through December 31, 1998.

An appropriate order will be entered contemporaneously herewith.

### *FINAL ORDER*

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of the Social Security Administration is hereby REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded a closed period of Social Security benefits as set out in the court's opinion. It is

FURTHER ORDERED that the Commissioner withhold from payments that are determined to be due the plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.

It is further ORDERED pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*