**Tony L. BLADOW, Plaintiff–Appellant,**

**v.**

**Kenneth S. APFEL, Commissioner of the Social Security Administration, Defendant–Appellee.**

**No. 99–1470.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1999.

Decided Feb. 29, 2000.

Mark G. Schneider, Fargo, North Dakota, argued, for appellant.

Carol S. Prescott, Denver, Colorado, argued (Deana R. Ertl–Lombardi and Lynn E. Crooks, on the brief), for appellee.

Before WOLLMAN, Chief Judge, LAY and BOWMAN, Circuit Judges.

## I. Introduction

LAY, Circuit Judge.

Tony L. Bladow (Bladow) appeals an administrative law judge's (ALJ's) denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433.[1] In view of the intervening case of *Kelley v. Apfel*, 185 F.3d 1211 (11th Cir.1999) (per curiam), we remand.

---

1. Bladow first filed for benefits in November of 1992. His application was denied initially and on reconsideration. The administrative law judge upheld the denial on February 25, 1994. He allegedly appealed to the Appeals Council; however, the Council claimed it did not receive his submission. Instead of refiling the appeal, Bladow decided to refile for benefits on August 24, 1994. The ALJ did not reopen the prior application and decision.

Bladow seeks disability benefits for a back condition that he claims prevents him from engaging in any substantial gainful activity. He complains of constant radiating pain from his right hip to ankle and occasional weakness in the right arm. The alleged onset date of this condition is March 15, 1992.

After being denied benefits initially and on reconsideration, Bladow sought an administrative hearing. Among the evidence presented to the ALJ was a Functional Capacities Evaluation (FCE) administered by an occupational therapist on October 11 and 12, 1994. The FCE tested factors such as muscle strength, body coordination, endurance, and range of body motion. The therapist concluded that Bladow could perform medium level work[2] if given a more diminished schedule such as two hours a day with a gradual increase to four. The therapist further stated, however, that Bladow "may tolerate the four-hour work day and gradually increase his work hours" if returned to a light level position.[3]

The Commissioner introduced the testimony of a Vocational Expert (VE) to show that other work existed that Bladow was capable of performing. The ALJ asked the VE whether an individual with Bladow's age, education, work experience, and FCE could perform his past relevant work.

Bladow's past relevant work primarily involved performing jobs requiring manual labor.[4] He responded that such an individual could not perform Bladow's past work because he read the FCE as limiting Bladow's work schedule to four hours a day even in a light level position. The ALJ later asked whether other work exists in the national or regional economy that such a person could perform if limited to six hours a day. The VE responded that such a person could work as a bench assembler, sorter, or telemarketer, and well over 100,000 of each of these jobs exist nationally and approximately 5,000 exist regionally. The VE later admitted on cross-examination by the claimant's counsel that less than half of these jobs were available on a part-time basis. Later, the ALJ asked the VE whether light level jobs would be available to an individual with Bladow's FCE who could work eight hours a day. The VE replied in the affirmative. The ALJ then asked "[a]nd if we were limited to a six hour day—would that again limit the numbers?" Again, the VE responded in the affirmative.

■ Based on the testimony of the VE, the ALJ upheld the denial, finding Bladow failed the fifth step of the disability inquiry under 20 C.F.R. § 404.1520 (1999).[5] The

2. The FCE defines "medium work" as:

> [e]xerting 20 to 50 pounds [of] force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. *Physical Demand requirements* are in excess of those for light work.

3. "Light work" is defined as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567 (1999).

4. Specifically, the record shows Bladow's past relevant work included: valve repairman; gas station attendant; machine operator; packer; and air brake technician. All of these were classified as semi-skilled positions. Bladow also worked as a general laborer, which was classified as unskilled.

5. The five steps in determining whether a claimant is disabled for purposes of receiving disability benefits are: (1) Is the claimant engaged in substantial gainful activity? (2) If not, does the claimant have a medically severe impairment or combination of impairments? (3) If so, is the impairment equivalent to one of a number of listed impairments found at 20 C.F.R. pt. 404, subpt. P, App. 1? (4) If not, is the claimant precluded from performing his previous work because of his impairment? (5) If so, does the claimant's impairment prevent him from performing other work in the national economy given his

ALJ felt the Commissioner had satisfied its burden at step five by presenting the testimony of the VE, upon which the ALJ substantially relied. The Appeals Council upheld the denial of benefits. Bladow appealed to the District Court of North Dakota, and both parties moved for summary judgment. The district court adopted the magistrate judge's recommendation and granted the Commissioner's motion for summary judgment. Bladow now appeals the district court's ruling.

## II. Discussion

■ Bladow argues that the ALJ improperly found him not disabled based on his ability to perform other work *part-time.* Bladow feels such a finding is in violation of the Commissioner's position in *Kelley,* 185 F.3d at 1213–15, which was handed down between the district court's order and the submission of this appeal. In that case, the Commissioner explained that, at step five of the disability determination, "only an ability [on the part of the claimant] to do full-time work will permit the ALJ to render a decision of not disabled." *Id.* at 1214. *See also Matz v. Sisters of Providence in Oregon,* No. Civ. 98–1598–JO, 1999 WL 1201682 (D.Or. Dec.8, 1999). The Commissioner based this policy interpretation on Social Security Ruling (SSR) 96–8p, which provides that "RFC [residual functional capacity] is

an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. *A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.*" [6] SSR 96–8p, 1996 WL 374184, at *1 (Social Security Administration, July 2, 1996) (emphasis added).

At oral argument in this case, the Commissioner conceded that the interpretation offered in *Kelley* is the official policy on determining RFC at step five. Nonetheless, the Commissioner argues that *Kelley* and SSR 96–8p do not mandate an award of disability benefits in this case. First, the Commissioner interprets the ALJ's finding that Bladow is not disabled as based on Bladow's ability to perform other work *full-time.* Secondly, even if the ALJ did find Bladow limited to part-time work, the government avers that limitation was a function of Bladow's deconditioning and, as such, should not be taken into consideration when determining Bladow's residual functional capacity. SSR 96–8p states that "[a]ge and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the individual's medically determinable impairment(s) and related symptoms) are not factors in assessing RFC in initial claims." SSR 96–8p, 1996 WL 374184, at *2. Hence, the Commissioner opines the ALJ should

age, education, and work experience? If the impairment precludes him from performing other work, the claimant is entitled to benefits. *Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). At step five of the disability inquiry, the burden of proof shifts to the Commissioner. *Kerns v. Apfel,* 160 F.3d 464, 466 (8th Cir.1998).

6. *Kelley* vacated the court's previous opinion in the same case. The court previously upheld the ALJ's alleged finding of no disability based on the claimant's capacity to perform part-time work because part-time work could be considered substantial gainful activity under 20 C.F.R. § 404.1572(a). The government subsequently moved to clarify *Kelley,* stating that the ALJ had come to the right result for the wrong reason. The government argued that unlike steps one and four where

an ability to perform part-time work could prevent a finding of disability, SSR 96–8p barred part-time work from entering into the equation at step five. Thus, it urged "a final decision of the Commissioner that based a denial of benefits at step five of the sequential evaluation process on an RFC to perform only part-time work ... would not be correct under SSR 96–8p." (Mem. in Supp. of Mot. for Clarification at 9.) While the Eleventh Circuit did not seem opposed to this policy interpretation, it did not officially adopt it as law. The ALJ in *Kelley* was found to have denied the benefits based on the claimant's ability to perform other work *full-time.* Thus, SSR 96–8p was not violated and there was no need to confront the issue of whether an ability to perform part-time work could prevent a finding of no disability at step five.

have ignored Bladow's part-time limitations (allegedly due to deconditioning) when determining his RFC.

In order to evaluate the Commissioner's arguments we must review the language of the ALJ's decision. The ALJ rejected the argument that the FCE reflects Bladow's inability to work at any level for more than four hours a day. In the realm of light work, which the ALJ found Bladow could perform, the ALJ stated the FCE "impl[ies] the claimant is able to work more than four hours ...." More importantly, the ALJ explained in Finding Number 12:

> Although the claimant's limitations do not allow him to perform the full range of light work, ... there are a significant number of jobs in the national economy which [he] could perform. Examples of such jobs are: telemarketer, jobs in assembly, and sorter. A vocational expert testified these jobs exist in significant numbers in the national and regional economies and would only be reduced by half *if the claimant was limited to working 6 hours a day.*

(emphasis added). Thus, while the ALJ rejected the contention that Bladow was unable to work more than four hours a day, the ALJ did not specifically find he was able to work full-time, either.

This court feels the best and most prudent option in this case is to remand for clarification of Bladow's RFC in light of *Kelley* and its treatment of SSR 96–8p. We read Finding Number 12 to be written in the alternative: if Bladow can perform full-time light level work, there are a significant number of jobs available to him in the national and regional economy; and if he can only work in a light level position part-time, the number of jobs available is only reduced by half. This language does

not give us a sufficient basis to decide the issue raised in *Kelley* regarding part-time work and step five of the disability analysis. Thus, the sensible solution is to remand for clarification of Bladow's RFC in light of *Kelley.*

■ Before we remand, however, we address the government's body habitus argument. If the six-hour limitation is due solely to Bladow's body habitus, there is no reason to remand the case. Our analysis would then focus on whether the finding of no disability is supported by substantial evidence in the record as a whole. *Tate v. Apfel,* 167 F.3d 1191, 1196 (8th Cir.1999).

The Commissioner relies largely on the language of the FCE in making its body habitus argument. The FCE forges a link of uncertain strength between Bladow's limited work hours and his "general deconditioning," stating that:

> [Bladow] would do best with a return to work of more diminished hours such as two hours and gradually increase to a four-hour position. *This is due to his decreased general conditioning and decreased functional endurance with activities.* If [Bladow] is returned to a light level position, he may tolerate the four-hour work day and gradually increase his work hours.

The FCE also suggests that Bladow engage in a general conditioning home program. The occupational therapist specifically noted in the FCE that Bladow did not have a specific home program of exercises at the time of testing. Both the ALJ and the magistrate took notice of Bladow's lack of conditioning, as well.

■ The record also contains reports by Dr. F.D. Proano, M.D., which make mention of Bladow's lack of conditioning.[7] On

---

7. We recognize that because the ALJ did not reopen the first hearing, principles of res judicata apply. *See Robbins v. Secretary of Health and Human Services,* 895 F.2d 1223, 1224 (8th Cir.1990) (per curiam). As such, the medical evidence from the initial proceeding cannot be subsequently reevaluated. *Rob-*

*bins,* 895 F.2d at 1224. However, *Robbins* explicitly states that an exception is made "where the prior medical evidence would serve as a background for new and additional evidence of deteriorating mental or physical conditions occurring after the prior proceeding." *Id.* Thus, we mention Dr. Proano's re-

December 27, 1993, Dr. Proano noted that Bladow had apparently gained twenty pounds in one month, but Bladow stated that he did not think he had been eating more than usual. On January 24, 1994, Dr. Proano noted that Bladow was feeling somewhat better and had actually lost weight. Finally, on February 15, 1994, Dr. Proano prescribed a trial dosage of Prednisone and scheduled a return visit within the following two or three weeks. Dr. Proano wrote: "At that time we'll discuss maintenance exercises for conditioning...."[8]

Under the government's argument, the FCE links Bladow's decreased work capacity to his general deconditioning, and there is other evidence that arguably supports that connection. However, we are troubled by the fact that the FCE never defines "general deconditioning," nor does it give concrete examples of Bladow's specific deconditioning in terms of its physical manifestations. Furthermore, the FCE states that Bladow's lower functional endurance is also to blame for his decreased work capacity, and nothing in the FCE expressly links his lower functional endurance to his deconditioning. As such, we do not find sufficient evidence that Bladow's body habitus is the sole, or even the primary, cause of his hourly work limitations. Given the imprecise nature of the FCE and Dr. Proano's arguably innocuous statements, we feel the best option is to remand on this issue, as well. On remand, the ALJ should seek to focus the blurry connection between Bladow's general deconditioning and his work limitations. *See Wiley v. Apfel,* 171 F.3d 1190, 1191–92 (8th Cir.1999) (remanding with directions that the ALJ ask a testifying doctor to clarify his testimony regarding the continuity of claimant's disability).

## III. Conclusion

While we recognize that this application for benefits has been in progress for over five years, we believe the record is too sketchy to decide these pivotal issues at this juncture. We therefore remand this case for further administrative proceedings consistent with this opinion.

---

ports written prior to the first hearing as a backdrop to new evidence regarding Bladow's condition.

**8.** Although this report is dated February 15, 1994, prior to the first hearing, it is effectively new evidence because it was not part of the record of the prior decision.