# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1770

_____

Stanley E. Schultz,                    *
                                              *

                   Appellant,              *

                                                *     Appeal from the United States

            v.                            *     District Court for the

                                                *     Western District of Missouri.

Michael J. Astrue,[1]             *

Commissioner of Social Security,    *

                                              *

                  Appellee.               *

_____

Submitted: October 20, 2006
Filed:  March 22, 2007

_____

Before WOLLMAN, RILEY, and GRUENDER, Circuit Judges.

_____

RILEY, Circuit Judge.

Stanley E. Schultz (Schultz) appeals the district court's[2] order affirming the Commissioner's denial of his application for disability insurance benefits (SSDI) and

_____

[1]Michael J. Astrue has been appointed to serve as Commissioner of Social Security and is substituted as appellee pursuant to Federal Rules of Appellate Procedure 43(c)(2).

[2]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. We affirm.

## I.     BACKGROUND

On January 8, 2002, Schultz (51 years old) filed an application for SSDI and SSI, claiming he has been disabled and unable to work since November 25, 2001, due to depression, generalized pain in his chest and throughout his body, high blood pressure, an elevated heart rate, headaches, rectal bleeding, fatigue, and myocardial ischemia. Schultz also complained of a bad right ankle, which he injured in a car accident in 1988. Before November 25, 2001, Schultz had completed the tenth grade and worked maintenance and construction. Schultz claimed his multiple conditions prevented him from working maintenance and construction.

Many physicians, psychologists, and other health professionals have examined and treated Schultz. Dr. Michael D. Ball (Dr. Ball) examined Schultz's right ankle. Dr. Ball concluded Schultz had "full motion in the foot" and did "not appear to have any gross restriction in his ability to sit, stand, walk or lift/carry/handle [objects less than ten pounds]," even though Schultz had limited flexibility in the ankle. Dr. Ball also opined Schultz did "not appear to have any mental problem which would impact his ability to perform basic tasks [and] make decisions required for daily living." Dr. Gregory W. Hubbard noted Schultz had limited flexibility in his ankle and walked with a limp. Dr. Dewey P. Ballard opined Schultz, even with his bad ankle, could occasionally lift fifty pounds and frequently lift twenty pounds; stand or walk for about six hours out of an eight-hour workday; occasionally climb, balance, kneel, crouch, crawl, and stoop; and sit, push, pull, reach, handle, finger, and feel without restriction.

Dr. Donald R. Thompson (Dr. Thompson) treated Schultz's nausea and vomiting. On June 7, 2002, Dr. Thompson performed an esophagogastroduodenoscopy, which revealed Schultz had an inflamed esophagus,

specifically, grade 4 esophagitis. Dr. Thompson prescribed medication for Schultz's inflamed esophagus. On March 17, 2003, Schultz visited Dr. Thompson for a check-up, at which time Dr. Thompson performed a second esophagogastroduodenoscopy. The second esophagogastroduodenoscopy revealed Schultz had a normal esophagus.

An Administrative Law Judge (ALJ) held a hearing on June 23, 2003. At the hearing, Schultz testified his pain, ankle, nausea, and vomiting prevented him from working. Schultz stated he rarely leaves his home, has visitors, or talks on the telephone, and he spends a typical day watching television alone. Schultz also said he could walk without using a cane and had not used a cane in years.

A vocational expert testified an individual of Schultz's age, education, work experience, and health condition—someone who could stand or sit for six hours out of an eight-hour workday; could occasionally climb, push, and pull; could not perform repetitive shoulder extensions; must avoid fumes, odors, dusts, gases, and poor ventilation; and must avoid hazardous machinery and unguarded heights—could not work at Schultz's past jobs, but could perform light work as an assembler or a hand packer. The vocational expert further testified there are approximately 21,000 assembler positions and 4,000 hand packer positions in Missouri.

The ALJ performed the five-step analysis set forth at 20 C.F.R. §§ 404.1520 and 416.920. At step one, the ALJ found Schultz had not engaged in substantial gainful activity since November 25, 2001. At step two, the ALJ found Schultz had mild degenerative joint disease of the right ankle, mild tendonitis of the shoulder, mild situational depression, and a remote history of alcohol abuse. The ALJ also found medication effectively controlled Schultz's hypertension, nausea, and vomiting. At step three, the ALJ concluded "no impairment or combination of impairments . . . meets or equals in severity the requirements of any impairment listed." Moreover, the ALJ found Schultz's "allegation of impairments, either singly or in combination,

producing symptoms and limitations of sufficient severity to prevent the performance of any sustained work activity is not credible." At step four, the ALJ found Schultz had the residual functional capacity (RFC) to perform light work, subject to specific conditions: (1) "lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally," (2) "more than occasional climbing of ramps and stairs," (3) "work at unprotected heights or around dangerous moving machinery," and (4) "having concentrated or excessive exposure to dust, fumes, chemicals, temperature extremes, high humidity or dampness, and other typical allergies, pollutants, and atmospheric irritants." The ALJ found Schultz had "no [other] credible, medically-established mental or other nonexertional limitations." The ALJ concluded, given Schultz's limitations, Schultz could not work maintenance or construction. At step five, the ALJ determined, even though Schultz could not perform the full range of light work, Schultz could perform "a significant number of jobs in the local and national economies." Therefore, because the ability to perform other work precludes finding that an individual is disabled, the ALJ concluded Schultz was not disabled and thus was not entitled to SSDI or SSI. See 20 C.F.R. §§ 404.1520(g), 416.920(g).

Schultz requested the appeals council review the ALJ's decision. The appeals council declined Schultz's request. Schultz appealed to the district court, which affirmed the Commissioner's denial of SSDI and SSI. This appeal followed. Schultz argues the ALJ erred by concluding he did not meet or exceed a listed impairment, discounting his subjective complaints, and improperly calculating his RFC.

## II.    DISCUSSION

We review de novo the district court's decision to affirm the Commissioner's denial of SSDI and SSI. Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006). If substantial evidence on the record as a whole supports the Commissioner's decision, it must be affirmed. Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006). "'Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.'" Smith v. Barnhart, 435 F.3d

926, 930 (8th Cir. 2006) (quoting <u>Young v. Apfel</u>, 221 F.3d 1065, 1068 (8th Cir. 2000)). "The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." <u>Estes v. Barnhart</u>, 275 F.3d 722, 724 (8th Cir. 2002).

### A. Listing of Major Impairments

Schultz argues the ALJ erred by concluding Schultz did not meet a listed impairment at the third step of the analysis. The Listing of Major Impairments, in relevant part, provides:

> *Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint*, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.03. "Inability to ambulate effectively means an extreme limitation of the ability to walk." <u>Id.</u> § 1.00(B)(2)(b)(1). "Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device." <u>Id.</u> Section 1.00(B)(2)(b)(2) further provides:

> *To ambulate effectively,* individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

Schultz contends he meets the listed impairment set forth in § 1.03 because he struggles to walk on rough or uneven surfaces. Schultz's contention, however, lacks support in the record. Schultz's doctors never imposed any specific limitation on Schultz's ability to walk. Moreover, at the administrative hearing, Schultz testified he could walk fifty yards without a cane and has not used a cane in years. See id. § 1.00(B)(2)(b)(1) (defining ineffective ambulation as generally requiring the use of hand-held assistive devices to walk). Furthermore, after Schultz injured his ankle in 1988, he worked construction and maintenance until 2001. Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Gowell v. Apfel, 242 F.3d 793, 798 (8th Cir. 2001). Substantial evidence supports the ALJ's conclusion Schultz's ankle did not meet a listed impairment.

### B.     Polaski Analysis

Additionally, Schultz argues the ALJ failed to properly perform an analysis under Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). "[Schultz's] subjective complaints may be discounted if there are inconsistencies in the record as a whole." Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). We will defer to an ALJ's credibility finding as long as the "ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001) (quoting Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)).

Under Polaski, to evaluate Schultz's subjective complaints of pain, the ALJ, in addition to considering "[t]he absence of an objective medical basis which supports the degree of severity of subjective complaints," Polaski, 739 F.2d at 1322, must examine "the claimant's prior work record and observations of third parties and physicians relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." Pelkey v. Barnhart, 433 F.3d 575, 578 (8th Cir. 2006). Although the ALJ never expressly

cited Polaski (which is our preferred practice), the ALJ cited and conducted an analysis pursuant to 20 C.F.R. §§ 404.1529 and 416.929, which largely mirror the Polaski factors. See Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004). Specifically, the ALJ found the objective medical evidence did not support Schultz's subjective complaints and Schultz had a good work history. The ALJ also found (1) Schultz spends most days sitting at home watching television, although this is by choice and not for any medical reason; (2) the signs of chronic and severe musculoskeletal pain are not present; (3) nothing exists regarding precipitating and aggravating factors; (4) medications control Schultz's hypertension, nausea, and vomiting, and Schultz neither takes strong doses of pain medication nor experiences adverse side-effects; and (5) no doctor has limited Schultz's ability to stand, sit, walk, bend, lift, or carry. We conclude the ALJ adequately, if not expressly, applied the Polaski factors and discounted Schultz's subjective complaints of pain. See, e.g., Goff, 421 F.3d at 791-92.

### C.    Residual Functional Capacity (RFC)

Finally, Schultz argues the ALJ improperly calculated Schultz's RFC because the ALJ underestimated the severity of Schultz's inflamed esophagus. The ALJ concluded medication controls Schultz's inflamed esophagus. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) (quotation omitted). Schultz's RFC was supported by substantial evidence in the record.

We have reviewed Schultz's remaining arguments and find them to be meritless. See 8th Cir. R. 47B.

## III.    CONCLUSION

We find no error of law, and substantial evidence in the record as a whole supports the ALJ's decision. Thus, we affirm the judgment of the district court.

_____