# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2837

_____

Martha Hillier,                           *

                                 *

          Appellant,             *

                                 *    Appeal from the United States

     v.                          *    District Court for the

                                 *    Eastern District of Arkansas.

Social Security Administration,   *

                                 *

          Appellee.              *

_____

Submitted: December 7, 2006
Filed: May 15, 2007

_____

Before LOKEN, Chief Judge, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Martha Hillier (Hillier) appeals the district court's[1] order affirming the Commissioner's denial of her application for disability insurance benefits (SSDI) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 401-434, 1381-1383f.  We affirm.

---

[1]The Honorable H. David Young, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

# I. BACKGROUND

Before filing the instant application for SSDI and SSI, Hillier filed a prior application for SSDI and SSI on August 30, 2000, alleging an onset date of March 10, 2000 due to her myofascial pain syndrome/fibromyalgia; muscle spasms; bad feet, knees, and back; numbness; ulnar entrapment at the elbow; headaches; blurred vision; sinusitis; nasal and breathing problems; previous nose surgeries; and stress incontinence. An Administrative Law Judge (ALJ) held a hearing, and on September 25, 2001, the ALJ issued a decision, concluding Hillier was not disabled within the meaning of the Act, because Hillier had the residual functional capacity to perform light work and could perform her past relevant work. The appeals council denied review of the ALJ's decision.

On January 16, 2002, Hillier (a forty-three-year-old woman) filed the instant application for SSDI and SSI, alleging a disability onset date of September 26, 2001, due to her myofascial pain syndrome/fibromyalgia; osteoarthritis; carpal tunnel syndrome; bad feet, knees, right elbow, right wrist, and back; numbness; ulnar entrapment at the elbow; neck and shoulder pain; hypertension; blurred vision; stress incontinence; and mental retardation. Before Hillier's alleged onset date, Hillier had completed the tenth grade. Additionally, Hillier previously had (1) cooked food, taken customers' orders, and operated a cash register at Wendy's Old Fashion Hamburgers restaurant (Wendy's); (2) worked as a cashier and priced items at the Salvation Army; and (3) been employed at National Uniforms, Captain D's restaurant, and Shoney's restaurant. Hillier claimed her multiple conditions preclude gainful employment.

Several doctors and other healthcare professionals examined Hillier. On January 23, 2001, Tammie Orlicek (Orlicek), a licensed psychological examiner, administered several tests. The test results showed Hillier was functionally illiterate; could spell at a third-grade level and do mathematics at a fifth-grade level; and had below average general verbal-academic aptitudes, word-recognition capacities,

abilities to deal with abstract problems requiring sequential reasoning and judgment, and visual-motor development. Hillier's handwriting was illegible. Orlicek concluded "[Hillier] may reasonably be expected to function independently by means of low demand employment," if she is provided "on-the-job training, supported employment[,] or job placement services," as well as "[g]uidance and counseling."

On February 26, 2001, Dr. A. Roy Tyrer (Dr. Tyrer) conducted a neurosurgical consultation of Hillier. Dr. Tyrer noted Hillier moved about with good agility, had a normal gait, exhibited a normal range of neck and shoulder motion, showed no cranial nerve or other neurological abnormality, and stood erect with reasonable flexibility. Furthermore, Dr. Tyrer discovered "no significant abnormal physical or neurological findings" and opined "[Hillier's] symptoms are somatic without organic basis."

On June 4, 2002, Dr. Sam Hester (Dr. Hester) and Claudia Davis (Davis) evaluated Hillier. Dr. Hester and Davis tested Hillier, concluding Hillier had a verbal IQ of 77, a performance IQ of 73, and a full-scale IQ of 73. Dr. Hester and Davis suggested Hillier "would have difficulty in cooperation with others in a job[-]related environment." Dr. Hester and Davis expressly conceded that "[d]ue to [Hillier's] varying effort and resistance[,] the testing may not closely match [Hillier's] true ability."

Dr. Brad Williams (Dr. Williams) examined Hillier's medical records for the Commissioner. Dr. Williams concluded Hillier had borderline intellectual functioning; was mildly restricted in the activities of daily living and in maintaining social functioning; and moderately restricted in maintaining concentration, persistence, and pace. Dr. Williams completed a mental residual functional capacity assessment, finding Hillier was moderately limited in the ability to: (1) understand, remember, and follow detailed instructions; (2) maintain attention and concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace

-3-

without an unreasonable number and length of rest periods; (4) accept instructions and respond appropriately to criticism from supervisors; and (5) set realistic goals or make plans independently of others. Dr. Williams found Hillier was not significantly limited in the ability to: (1) remember locations and work-like procedures; (2) understand, remember, and follow very short and simple instructions; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) sustain an ordinary routine without special supervision; (5) work in coordination with or proximity to others without being distracted by them; (6) make simple work-related decisions; (7) interact appropriately with the general public; (8) ask simple questions and request assistance; (9) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and (10) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. Dr. Williams noted Hillier could "perform work where interpersonal contact is incidental to work performed."

An ALJ held a hearing on November 4, 2003. At the hearing, Hillier testified no doctor had prohibited her from working and her only limitations are not being able to reach over her head and lift heavy objects. Hillier's husband, Raymond Hillier, testified Hillier had a bad knee and doctors had diagnosed Hillier with mild arthritis. The vocational expert testified an individual of Hillier's age, education, past work experience, and residual functional capacity–someone who has mild to moderate pain that is restrictive; can lift twenty pounds occasionally and ten pounds frequently; cannot stand for longer than an hour without restriction and can stand for four hours out of an eight-hour workday; can sit for two hours without interruption and can sit for six to eight hours out of an eight-hour workday; has some limitation in standing and walking; can push or pull twenty pounds; can occasionally reach overhead, climb, stoop, crouch, kneel, and crawl; cannot constantly reach or handle; has a low average to borderline IQ; can understand, remember, and follow concrete instructions; can interact with the public; and can perform simple, concrete work that is unskilled or semiskilled–could not perform Hillier's past jobs, but could perform cashier work

with a sit/stand option at either the unskilled or semiskilled level. The vocational expert further testified there are approximately 9,000 cashier positions with a sit/stand option at the unskilled level, and 5,800 sedentary cashier positions at the semiskilled level in Arkansas, 400,000 and 605,000 nationally, respectively.

The ALJ performed the five-step analysis set forth at 20 C.F.R. §§ 404.1520 and 416.920. See generally Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). At step one, the ALJ found Hillier had not engaged in substantial gainful activity since September 26, 2001. At step two, the ALJ found Hillier's conditions imposed significant restrictions on Hillier's ability to work, and thus were severe impairments. At step three, the ALJ found "no evidence to show the existence of any impairment that meets the criteria of any of the listed impairments." At step four, the ALJ found Hillier had the residual functional capacity (1) to lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; (2) to sit for six to eight hours out of an eight-hour workday without significant restriction; (3) to stand or walk for up to four hours out of an eight-hour workday with a stand-sit option and the ability to sit for at least one hour; (4) to reach over her head occasionally; and (5) to climb, stoop, crouch, kneel, and crawl occasionally. Additionally, the ALJ noted Hillier had low average to borderline intellectual functioning, exhibited some symptoms of depression (which were controlled by medication), could perform unskilled to low semiskilled work, and could understand, remember, and follow simple, concrete instructions. The ALJ concluded Hillier's conditions preclude performance of her past relevant work. At step five, the ALJ found the Commissioner had proven Hillier could work as a cashier and a significant number of cashier jobs exist in the local and national economy. Therefore, because the ability to perform other work precludes a finding that an individual is disabled, the ALJ concluded Hillier was not disabled under the Act, and thus was not entitled to SSDI or SSI. See 20 C.F.R. §§ 404.1520(g), 416.920(g).

Hillier requested the appeals council review the ALJ's decision. The appeals council denied Hillier's request. Hillier then appealed to the federal court, which affirmed the Commissioner's denial of SSDI and SSI. This appeal followed. Hillier argues the ALJ erred at step five by (1) phrasing the hypothetical question without including both the concrete consequences of Hillier's borderline intellectual functioning and Hillier's restrictions in dealing with others; and (2) relying on the vocational expert's testimony, which was not responsive to the ALJ's hypothetical question, and identified jobs that exceeded Hillier's mental limitations. The Commissioner argues res judicata precludes any consideration of Orlicek's report.

## II.   DISCUSSION

We review de novo the court's decision to affirm the Commissioner's denial of SSDI and SSI. Schultz v. Astrue, 479 F.3d 979, 982 (8th Cir. 2007). If substantial evidence, that is, "relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion," on the record as a whole supports the Commissioner's denial of SSDI and SSI, we must affirm the Commissioner's decision. Id. (quotation omitted).

### A.   Res Judicata

As a preliminary matter, to determine whether res judicata bars consideration of Orlicek's report, we must determine the relevance and persuasiveness, if any, of Hillier's medical records dated before the ALJ's decision in the prior proceeding. Res judicata bars subsequent applications for SSDI and SSI based on the same facts and issues the Commissioner previously found to be insufficient to prove the claimant was disabled.[2] Robbins v. Sec'y of Health & Human Servs., 895 F.2d 1223, 1224 (8th Cir.

---

[2]The Commissioner can waive the defense of res judicata by reopening the claimant's prior application. See Boock v. Shalala, 48 F.3d 348, 351-52 (8th Cir. 1995); White v. Sullivan, 901 F.2d 94, 95 (8th Cir. 1990) (per curiam); see also 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4475 (2d ed. 2002) (stating "the agency may waive preclusion just as a

1990) (per curiam); Janka v. Sec'y of Health, Educ. & Welfare, 589 F.2d 365, 367 (8th Cir. 1978); see generally 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1). If res judicata applies, "the medical evidence from the initial proceeding cannot be subsequently reevaluated." Bladow v. Apfel, 205 F.3d 356, 360 n.7 (8th Cir. 2000).

Res judicata only precludes subsequent applications for SSDI and SSI if the claimant "has not presented any new evidence that . . . [her] condition changed or deteriorated" since the prior proceeding. Robbins, 895 F.2d at 1224. New evidence includes both facts and issues that differ from the facts and issues of concern at the prior proceeding, Janka, 589 F.2d at 367, as well as evidence that was not part of the record in the prior proceeding, Bladow, 205 F.3d at 361 n.8 (treating a medical report dated before the ALJ's decision in the prior proceeding as new evidence because it was not part of the prior record). Especially in the context of a progressive disease or degenerative condition, evidence that is offered as proof of a disability, and not found persuasive by an ALJ in a prior proceeding, may be considered in a subsequent proceeding in combination with new evidence for the purpose of determining if the claimant has become disabled since the ALJ's previous decision. See Groves v. Apfel, 148 F.3d 809, 810-11 (7th Cir. 1998) (stating "there is no necessary inconsistency in finding [a claimant] not disabled at time $t$ but disabled at $t+1$," and thus, there is "no absolute bar to the admission in the second proceeding of evidence that had been introduced in the prior proceeding yet had not persuaded the agency to award benefits"); see also Rogers v. Chater, 118 F.3d 600, 601 (8th Cir. 1997) (noting

---

party to a judicial proceeding can do"). Here, the ALJ did not reopen Hillier's prior application for SSDI and SSI by reviewing Hillier's medical records dated before Hillier's alleged onset date. See Robertson v. Sullivan, 979 F.2d 623, 625 (8th Cir. 1992) (per curiam) ("The review of a claimant's medical history, however, does not constitute reconsideration "'on the merits" necessary to constitute a *de facto* reopening of the earlier application.'" (quoting Rohrich v. Bowen, 796 F.2d 1030, 1031 (8th Cir. 1986))).

a claimant generally cannot seek benefits in a subsequent proceeding for any time-period for which the prior proceeding had denied benefits).

Both Dr. Tyrer's and Orlicek's reports are dated before the ALJ's decision in the prior proceedings. Hillier submitted Dr. Tyrer's report and did not submit Orlicek's report during the prior proceedings. Because Hillier previously submitted Dr. Tyrer's report, Dr. Tyrer's report "cannot be reevaluated in this proceeding," rather it can only be considered "as a background for new and additional evidence of deteriorating mental or physical conditions occurring after the prior proceeding." Robbins, 895 F.2d at 1224. Because Hillier did not submit Orlicek's report during the prior proceeding, Orlicek's report constitutes new evidence and thus res judicata does not bar consideration of Orlicek's report. See Bladow, 205 F.3d at 361 n.8.

## B.    Hypothetical Question

Hillier argues the ALJ's hypothetical question to the vocational expert was deficient because the hypothetical question failed to capture the concrete consequences of Hillier's borderline intellectual functioning and Hillier's restricted ability to interact with others. "Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006) (quotation omitted). Hypothetical questions should "set[] forth impairments supported by substantial evidence [on] the record and accepted as true," Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005) (quotation omitted), and "capture the 'concrete consequences' of those impairments," Lacroix, 465 F.3d at 889 (quoting Roe v. Chater, 92 F.3d 672, 676-77 (8th Cir. 1996)).

In phrasing the hypothetical question, the ALJ stated, "[t]he file indicates [Hillier] has an IQ score in the 70's, . . . I find her IQ to be low average to borderline." The ALJ also stated Hillier could understand, remember, and follow concrete instructions and limited Hillier to simple, concrete work, either unskilled or

semiskilled.  Although the ALJ's hypothetical question did not expressly state Hillier was functionally illiterate and had poor reading and writing skills, Hillier's low average to borderline intellectual functioning necessitated limiting Hillier to simple, concrete work, either unskilled or semiskilled.  By limiting Hillier to simple, concrete work, the ALJ captured the practical consequences of Hillier's low average to borderline intellectual functioning.  Cf. Roe, 92 F.3d at 676-77.

The ALJ also phrased the hypothetical question without any limitation on Hillier's ability to interact with the public or co-workers.  Although the record includes facts indicating Hillier has difficulty interacting with others, Dr. Williams found Hillier was not significantly limited in the ability either to interact appropriately with the general public or to get along with co-workers and Orlicek concluded Hillier could succeed in the proper work environment.  Hillier had interacted with the public and co-workers during her tenure at Wendy's and the Salvation Army.  Substantial evidence supports the ALJ's finding that Hillier was not limited in the ability to interact with the public and co-workers.  See Travis v. Astrue, 477 F.3d 1037, 1041-42 (8th Cir. 2007) (stating "[i]t is the ALJ's duty to resolve conflicts in the evidence," and we do "not reverse merely because evidence also points to an alternate outcome").  The ALJ presented the vocational expert with a fair hypothetical question that accurately set forth Hillier's limitations.

### C.    Non-responsive Answer To The Hypothetical Question

Hillier contends the vocational expert failed to respond to the ALJ's hypothetical question.[3]  The vocational expert testified Hillier could work as a

---

[3]Hillier also argues the vocational expert's testimony is not responsive to the ALJ's hypothetical question because working as a cashier involves interacting with others.  This argument is without merit because substantial evidence on the record as a whole supports the ALJ's conclusion Hillier was not limited in the ability to interact with the public and co-workers.  See supra Part II.B.

cashier.[4]   Hillier contends working as a cashier requires level three reasoning development,[5] which is inconsistent with the ALJ's hypothetical question limiting Hillier to understanding, remembering, and following concrete instructions.

"[A]n ALJ cannot rely on expert testimony that conflicts with the job classifications in the [Dictionary of Occupational Titles] unless there is evidence in the record to rebut those classifications." Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 979 (8th Cir. 2003).   The Dictionary of Occupational Title definitions "are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." Wheeler v. Apfel, 224 F.3d 891, 897 (8th Cir. 2000) (quoting Hall v. Chater, 109 F.3d 1255, 1259 (8th Cir. 1997)).   "[N]ot all of the jobs in every category have requirements identical to or as rigorous as those listed in the [Dictionary of Occupational Titles]." Id.

In Clay v. Barnhart, 417 F.3d 922, 931 (8th Cir. 2005), the vocational expert responded to a hypothetical question that, among other things, limited the ability of the claimant to understanding, remembering, and following simple, concrete instructions.  The vocational expert testified the claimant could work as a cashier. Id. We noted the vocational expert's testimony that the claimant in the hypothetical question could work as a cashier was "arguably inconsistent with the [Dictionary of

---

[4]The vocational expert testified Hillier could work as a cashier II (clerical) or check cashier.   See U.S. Dep't of Labor, Dictionary of Occupational Titles §§ 211.462-010, 211.462-026 (1991), available at http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02A.HTM.

[5]Both the cashier II (clerical) and check cashier positions require level three reasoning development, defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations."   Dictionary of Occupational Titles app. C, available at http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

Occupational Titles's] definition of the job of cashier." Id. We, however, refrained from deciding the issue because the vocational expert also testified the claimant could work in the areas of unskilled, sedentary assembly work, which existed in significant numbers. Id.; see also Wilson v. Zoellner, 114 F.3d 713, 721 n.4 (8th Cir. 1997) (noting a panel is bound to follow Eighth Circuit precedent, not dicta).

Here, we must answer the question whether Hillier–who can understand, remember, and follow simple, concrete instructions–can work as a cashier. In the abstract, tension exists between only being able to understand, remember, and follow simple, concrete instructions and working as a cashier. See Clay, 417 F.3d at 931. We, however, do not decide cases in the abstract. Here, Hillier previously worked as a cashier at both Wendy's and the Salvation Army. Hillier's past work experience, in combination with the absence of any evidence showing any mental deterioration since Hillier worked at Wendy's and the Salvation Army, demonstrate Hillier has the mental capacity to work as a cashier. Cf. Jones, 315 F.3d at 979 (concluding a claimant had the mental capacity to perform work, even though the work exceeded the claimant's skill level according to the Dictionary of Occupational Titles, based on the claimant's prior work history). The vocational expert's testimony adequately responded to the hypothetical question posed by the ALJ, and Hillier's job history supported a conclusion Hillier's mental limitations did not preclude her from working as a cashier.

## III.  CONCLUSION
We affirm the judgment of the district court.

_____