# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3213

_____

| | | |
|---|---|---|
| Debra J. Renfrow, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Michael J. Astrue, Commissioner of | * | |
| Social Security, | * | |
| | * | |
| Defendant/Appellee. | * | |

_____

Submitted: March 16, 2007
Filed: August 13, 2007

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Debra J. Renfrow appeals from the district court's[1] grant of summary judgment against her on her claim for social security disability insurance. Renfrow claims that the Administrative Law Judge who handled her claim at the administrative level erred in failing to ask the vocational expert who testified at her hearing whether there was any conflict between the opinion he offered and the <u>Dictionary of Occupational Titles</u>

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

(4th ed. 1991). We conclude that any error by the ALJ was harmless on the record before us and therefore we affirm.

The issue before us is very narrow. Renfrow and the Commissioner of Social Security agree that the ALJ correctly proceeded through the first four steps of the five-step inquiry dictated by 20 C.F.R. § 404.1520. First, the ALJ found that Renfrow has not engaged in substantial gainful activity since the date on which she alleges she became disabled. Second, the ALJ found that Renfrow suffered from mitral stenosis, muscularskeletal and neurological disorders of the right hand, bilateral shoulder disorders, neck disorders, asthma, sleep apnea, left foot pain, and depression, which amounted to a severe impairment. Third, the impairments were not severe enough to meet or equal one of the impairments listed in Appendix 1, Subpart P of 20 C.F.R. Part 404. Fourth, based on the testimony of a vocational expert, the ALJ found Renfrow did not retain sufficient residual functional capacity to perform her past relevant work, which required a very heavy exertional level.

Arriving at the last step of the inquiry, the ALJ considered whether the Social Security Administration had borne its burden of proving that there were jobs in the economy for a person of Renfrow's residual functional capacity. At the hearing, the ALJ asked the vocational expert a hypothetical question:

> Q: If we hypothetically take a woman 40 to 45 years of age, with education and work experience like the claimant has, and if she's limited to lifting 10 pounds maximum, and–but primarily with her left nondominant hand, and cannot be using her dominant hand for any strenuous or repetitive activity, and cannot be lifting over 3 pounds with that occasionally, and cannot be expected to do complex technical work, should have only brief and superficial [sic] with, with others, and let's say those are the only limitations our hypothetical person had.
> . . .
> Would there be unskilled work that could accommodate those limitations, if they were the only limitations?

The vocational expert responded:

> Well, you'd have to look at the sedentary level of work and you have to look into things like information clerks, customer service clerks, those type of occupations. The–probably the information–yeah, that–those would be fine, and–
> Q. (by the ALJ): You can do those without needing repetitive use of your dominant hand?
> A: Well, you know the information clerks, if you're looking at rest areas and, you know, hospitals, that kind of thing, I believe you could, yes.

The ALJ then asked about how many such jobs existed:

> Q. How many of those jobs did you say to the first hypothetical that exist? Do they really exist in the real world?
> A. Well, the information clerk that fall in a sedentary classification of work , there at [sic] 15,500 of those.
> . . . And customer service clerks, there are a wide variety of those. There are, you know, 3 or 400,000, but if you reduce them by not having repetitive activity, you're probably getting down into 10 to 15 percent of those jobs. So, we're taking 3–you know, 30,000 or so.

Based on this testimony, the ALJ found that "considering the claimant's age, educational background, work experience, and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy." Accordingly, the ALJ held that Renfrow was not disabled.

Renfrow requested review by the administrative Appeals Council; when that was denied, she filed suit for review under 42 U.S.C. § 405(g). The Commissioner and Renfrow both moved for summary judgment. The Magistrate Judge[2]

_____

[2]The Honorable Arthur J. Boylan, United States Magistrate Judge for the District of Minnesota.

recommended granting the Commissioner's motion and denying Renfrow's, and the district court adopted that recommendation. Under section 405(g), the Commissioner's findings of fact are conclusive if supported by substantial evidence on the record as a whole. We review de novo the district court's decision upholding the Commissioner's denial of benefits. Hillier v. Soc. Sec. Admin., 486 F.3d 359, 364 (8th Cir. 2007).

On appeal, Renfrow contends that the ALJ erred by failing to ask the vocational expert whether his testimony was consistent with the Dictionary of Occupational Titles. The Commissioner concedes that the ALJ did err, since the Commission's own policy, SSR 00-4p, mandates: "When a [vocational expert] or [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] or [vocational specialist] evidence and the information provided in the [Dictionary of Occupational Titles]." The ALJ was required not only to ask the expert whether there was a conflict, but also to obtain an explanation for any such conflict. Massachi v. Astrue, 486 F.3d 1149, 1152 & n.7 (9th Cir. 2007) (collecting cases). The ALJ did not follow this policy and so erred. See id.

The Commissioner contends that the ALJ's error was harmless because there was no conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. This is the fighting point in this case. Renfrow contends that the vocational expert specified two jobs, "Information Clerk," No. 237.367-018, and "Customer Service Clerk," No. 299.367-010, that are specifically designated by the Dictionary of Occupational Titles as requiring "light work," whereas she has only the capacity to do sedentary work. The Commissioner responds that the ALJ's testimony did not specify those particular two jobs, but instead referred to the broad categories of information clerk and customer service clerk and rendered his opinion about the jobs existing in that category that he thought compatible with Renfrow's limitations. Our review of the expert's testimony shows that he in fact referred to broad categories,

rather than the two particular jobs identified by Renfrow, since the expert specifically referred to "the information clerk that fall in a sedentary classification" and the "wide variety" of customer service clerk jobs amounting to 300,000 to 400,000 jobs nationwide.

So the real question is whether there is a conflict between the vocational expert's opinion that Renfrow could do jobs within the information and customer service clerk categories and the Dictionary of Occupational Titles' requirements for those jobs. The Commissioner contends that there are jobs within those two categories that are consistent with Renfrow's limitations, and he points to two jobs, "Telephone Quotation Clerk," No. 237.367-046, and "Charge Account Clerk," No. 205.367-014, which fall within the general categories of information and customer service clerks, but which require only a sedentary exertional level.

In her reply brief, Renfrow argues that those two jobs exceed her capacities because they require a reasoning level of three (on a six level scale) and "frequent reaching and handling," which she contends conflicts with her inability to do complex work and her inability to use her right hand for repetitive activity. The jobs in question are both classified as unskilled and so do not appear to be "complex." See Hillier, 486 F.3d at 367 (expert's opinion that claimant who was limited to following "simple, concrete instructions" could work as cashier was not inconsistent with Dictionary of Occupational Titles description of cashier as requiring level three reasoning). Further, the frequent reaching and handling requirements are not equivalent to repetitive use of the right hand.

In sum, the ALJ's error in failing to ask the vocational expert about possible conflicts between his testimony and the Dictionary of Occupational Titles was harmless, since no such conflict appears to exist. See Massachi, 486 F.3d at 1154 n.9 (failure to follow SSR 00-4p would have been harmless if there had been no conflict between opinion and Dictionary).

We affirm the judgment of the district court.

_____