[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 28, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15593
Non-Argument Calendar

_____

D. C. Docket No. 06-00053-CV-OC-10-GRJ

NANCY MAFFIA,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 28, 2008)**

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Nancy Maffia, proceeding pro se, appeals the Social Security

Commissioner's ("Commissioner") denial of disability insurance benefits, 42

U.S.C. § 405(g). For the reasons that follow, we vacate and remand.

Maffia filed for disability benefits in 2003, alleging disability due to female and intestinal problems. At a hearing before an Administrative Law Judge ("ALJ"), she testified that pain was her primary symptom, and she relied on pain medications Percocet, Lupron, and Vicodin. She described the pain as a seven or eight on a scale of one-to-ten, but admitted that she could do household chores and general grooming activities with periods of rest.

The medical records established that Maffia was diagnosed with severe pelvic adhesions, chronic pelvic pain, and a small bowel obstruction. She also experienced ovarian cysts and lower abdominal pain. Her treating physician, Dr. Goldman, recommended a total hysterectomy. Maffia continued to experience chronic pain, as noted by Dr. Goldman. After treating Maffia for over four years, Dr. Goldman concluded that Maffia suffered from a serious inoperable condition. In addition, Maffia suffered numerous foot ailments and deformities, resulting in pain that required Darvocet. However, a 2004 doctor's report by Dr. Jasjit Pawha indicated that Maffia's gait and stance were normal, she was able to squat and ambulate without assistance, and she had full range of motion in her cervical spine and extremities. Dr. Pawha did, however, indicate that these findings were subject to restriction when Maffia experienced pain. Despite treatment for her ailments,

2

Maffia continued to complain of pain, although a subsequent medical report from Dr. U.S. Mishra indicated that the pain was controlled with medications.

In 2005, Maffia received additional treatment for foot ailments and was instructed to limit excessive ambulation. Nevertheless, Dr. Mishra indicated in a 2005 medical source statement that, although lifting and carrying were affected by Maffia's impairment, Maffia could lift and carry up to twenty pounds frequently, climb, balance, and kneel frequently, and could crawl and crouch occasionally. Maffia also experienced limitations in reaching and fine manipulation. The same report expressed that Maffia could stand and/or walk for less than two hours, and would need to alternate sitting and standing to relieve discomfort, although it is unclear whether the physician placed limitations on Maffia's ability to sit for long periods of time.

The ALJ found that Maffia was not disabled, noting Maffia's testimony regarding pain but concluding Maffia was not entirely credible. Specifically, the ALJ found that the medical evidence did not support the level of pain reported, and that there was no disabling pain present that was not treatable with medications. The ALJ concluded that, although Maffia suffered severe and non-severe impairments, Maffia could perform a full range of sedentary work and relied on the Medical-Vocational Grids ("the Grids") to deny benefits. The Appeals

3

Commission denied the request for review, and Maffia, with assistance of counsel, filed her complaint in the district court arguing that the ALJ failed to consider Dr. Goldman's opinion and failed to properly apply the pain standard. The district court upheld the denial of benefits. Maffia now appeals. Liberally construing her pro se argument, Haines v. Kerner, 404 U.S.519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), she contends that the ALJ failed to consider all the medical evidence in the record.

Where a challenge to the denial of benefits is properly preserved on appeal, which we will assume it is here due to Maffia's pro se status, we will deem the Commissioner's factual findings conclusive if supported by substantial evidence, although review of legal conclusions is de novo. Lewis v. Barnhart, 285 F.3d 1329, 1330 (11th Cir. 2002). The Commissioner's decision will be affirmed if it is supported by substantial evidence and the Commissioner applied the correct legal standards. Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999). "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citation omitted); see also Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir.

2005) (substantial evidence is less than a preponderance). We may not decide facts anew, make credibility determinations, or reweigh the evidence. Moore, 405 F.3d at 1211.

In determining whether a claimant is disabled, the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history. DePaepe v. Richardson, 464 F.2d 92, 94 (5th Cir. 1972).[1] A claimant has the burden of proving that she is disabled and of producing evidence in support of her claim. 42 U.S.C. § 423(d)(5)(A); Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).

An ALJ must follow a five-step process in making a social security disability determination. Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of proof for the first four steps: (1) whether she is currently performing a substantial gainful activity; (2) whether she has a severe impairment; (3) whether that severe impairment meets or exceeds an impairment in the listings; and (4) whether she can perform her past relevant work.

---

[1] Decisions of the Fifth Circuit, handed down prior to close of business on September 30, 1981, are binding precedent. Bonner v. City of Prichard, 661 F.2d 1206, 1209-10 (11th Cir. 1981) (en banc).

Id. at 1237-39, 1241 n.10.  Only at the fifth step does the burden shift to the Commissioner, who must demonstrate the existence of a significant number of jobs in the national economy that the claimant can perform.  Id. at 1237, 1239, 1241 n.10.

In order to perform the fourth and fifth steps, the ALJ must determine the claimant's residual functional capacity, or RFC, which is an assessment, based upon all relevant medical and other evidence, of a claimants' remaining ability to do work despite her impairments.  Id. at 1238-39; Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).  RFCs may contain both exertional and nonexertional limitations.  Phillips, 357 F.3d at 1242-43. These limitations generally include a restriction to a particular physical exertion level.  20 C.F.R. §§ 404.1567-.1568.  A job is sedentary if periods of standing or walking total no more than two hours of an eight-hour workday and sitting totals approximately six hours.  Kelley, 185 F.3d at 1214 n.2.

In assessing RFC, the ALJ must state with particularity the weight given different medical opinions and the reasons for doing so.  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).  An ALJ must consider the combined effects of a claimant's impairments in determining whether she is disabled and make specific and well-articulated findings as to the effect of the impairments and whether, when

combined, they cause the claimant to be disabled. Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987). The opinion of a treating physician must be given substantial weight unless "good cause" is shown to the contrary. Lewis, 125 F.3d at 1440. We have found "good cause" where the evidence supported a contrary finding. Id. Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, no reversible error occurs. Moore, 405 F.3d at 1212.

"[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). Opinions on some issues, such as whether a claimant is disabled, the assessment of a claimant's RFC, and the application of vocational factors, are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case . . . ." 20 C.F.R. § 404.1527(e).

At the fifth step, the ALJ uses the claimant's RFC, age, education, and work experience to determine if other work is available in significant numbers in the national economy that the claimant can perform. Phillips, 357 F.3d at 1239. In order to do this, the ALJ can either use the Grids or call a vocational expert

("VE"). Id. at 1239-40. Exclusive reliance on the Grids is not appropriate, however, either "when the claimant is unable to perform a full range of work at a given residual functional level or when [she] has non-exertional impairments that significantly limit basic work skills." Id. at 1242 (quotation marks, alterations, and emphasis omitted). If the claimant cannot clearly do unlimited types of work at the exertional level in question, a VE must be called. See Marbury, 957 F.2d at 839 (reversing and remanding after holding that claimant could not do unlimited light work and, therefore, ALJ erred by relying exclusively on the Grids).

"[We have] interpreted 'significantly limit basic work skills' as limitations that prohibit a claimant from performing 'a <u>wide</u> range' of work at a given work level." Phillips, 357 F.3d at 1243 (emphasis in original). "The ALJ must make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations." Foote, 67 F.3d at 1559 (internal quotation omitted).

Here, the ALJ failed to make specific findings in support of his conclusion that Maffia could perform the full range of sedentary work. The ALJ also failed to state with particularity the weight given to the different medical opinions presented by the parties, and the reasons for doing so. See Sharfarz, 825 F.2d at 279. The ALJ further mischaracterized Dr. Pawha's medical opinion that Maffia was not

8

restricted for sitting, standing, and walking, by not considering Pawha's statement that the opinion was subject to restriction when Maffia was in pain. Similarly, the ALJ mischaracterized Dr. Mishra's statement, finding that none of Maffia's impairments would have any significant impact on her ability to sit for prolonged periods, even though Dr. Mishra indicated that sitting *was* affected by the impairment and Maffia would need to periodically alternate sitting and standing to relieve pain or discomfort, and Maffia was limited in her abilities of fine manipulation. Furthermore, the ALJ ignored the real possibility that Dr. Mishra indicated that Maffia could sit for less than six hours in an eight-hour day, where a sedentary job involves sitting for six hours a day. See Kelley, 185 F.3d at 1214 n.2.

Additionally, the ALJ merely stated that Maffia could perform substantially all of the seven primary strength demands required by work at the sedentary level, without specifically analyzing how this could be in light of the medical opinions in the record. See Phillips, 357 F.3d at 1242. Finally, the ALJ's suggestion that only a government employer would permit her to miss three days of work per month because of her medical problems was made without any basis in the record and without consulting a VE. If this were, in fact, true, it would severely restrict Maffia's access to the open market. See McRoberts v. Brown, 841 F.2d 1077,

9

1081 n.2 (11th Cir. 1988) (noting VE's testimony that a claimant who could not sit or stand for more than four hours in a work day had severely restricted access to the open market).

In sum, because of the insufficient findings regarding (i) the weight afforded Maffia's medical evidence, (ii) whether her ability to sit was impaired and, if so, (iii) how long she could sit in an eight-hour day, it is not possible to conduct meaningful appellate review of the ALJ's conclusion as to the level of work which Maffia could perform and whether application of the Grids was appropriate. Therefore, we vacate the judgement and remand to the district court with instructions to remand to the Commissioner for more specific findings.

**VACATED AND REMANDED.**